

1  BENJAMIN RAMOS, State Bar No.:156643
   LAW OFFICE OF BENJAMIN RAMOS
2  7405 Greenback Lane #287
   Citrus Heights, CA  95610
3  Telephone: (916) 967-2927

4

5  Attorney for Petitioner,
6  Carlos Chico

7

8

9          IN THE UNITED STATES DISTRICT COURT

10        FOR THE EASTERN DISTRICT OF CALIFORNIA

11                 SACRAMENTO DIVISION

12                          CIV.S- 05-0146 MCE PAN

13

14  Carlos Chico,              CASE #

15        Petitioner,
                              PETITION FOR WRIT OF HABEAS
16     vs.                    CORPUS

17  Rosanne Campbell, Warden (A),

18

19        Respondent.

20

21

22

23

24

25

FILED

JAN 2 4 2005

CLERK, U.S. DISTRICT COU
EASTERN DISTRICT OF CALIFOR.
BY_____
       DEPUTY CLERK

AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

## United States District Court

District _Eastern_

| Name Carlos Chico | Prisoner No. P-13303 | Case No. |
|---|---|---|

Place of Confinement
Mule Creek State Prison 8-7-230
P.O. Box 409000
Ione, CA 95640

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| Carlos Chico | v. Rosanne Campbell, Warden (A) |

The Attorney General of the State of:

### PETITION

1. Name and location of court which entered the judgment of conviction under attack _Superior Court, San Mateo County, California, Case # SCO42571A_

2. Date of judgment of conviction _July 13, 1998_

3. Length of sentence _20 years ↓ 8 months_

4. Nature of offense involved (all counts) _Robbery, four counts (P.C. § 2125) armed enhancement (P.C. § 12022 subd.(a)(1))._

5. What was your plea? (Check one)
   (a) Not guilty ☑
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☑ No ☐

9. If you did appeal, answer the following:

(a) Name of court _Court of Appeal, First Appellate District Division Four_

(b) Result _Affirmed_

(c) Date of result and citation, if known _December 21, 2001_

(d) Grounds raised _The imposition of three enhancements under Penal Code Section 12022.53 was unauthorized._

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court _California Supreme Court_

(2) Result _Review granted then dismissed_

(3) Date of result and citation, if known _October 29, 2003_

(4) Grounds raised _The imposition of three enhancements under Penal Code Section 12022.53 was unauthorized._

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court _____

(2) Result _____

(3) Date of result and citation, if known _____

(4) Grounds raised _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ✓ No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court _Court of Appeal, First Appellate Dist._

(2) Nature of proceeding _Habeas Corpus_

(3) Grounds raised _The 21-year 8-month sentence originally imposed violated petitioner's plea_

(3)

_bargain, under which he was promised a sentence that would not exceed 20 years, 8 months._

(4) Did you receive an evidentiary hearing on your petition, application or motion?

· Yes ___  No ✓

(5) Result   Sentence modified to 20 years 8 months.

(6) Date of result   09/21/98

(b) As to any second petition, application of motion give the same information:

(1) Name of court   Court of Appeal, First Appellate Dist.

(2) Nature of proceeding   Habeas Corpus

(3) Grounds raised   The imposition of three enhancements under Penal Code Section 12022.53 was unauthorized.

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes ___  No ✓

(5) Result   Petition Denied

(6) Date of result   December 21, 2001

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc.        Yes ___  No ✓

(2) Second petition,           Yes ___  No ___

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

Habeas corpus petition achieved desired result in first petition.

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(I) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: The imposition of three enhancements under Penal Code Section 12022.53 was unauthorized.

Supporting FACTS (state *briefly* without citing cases or law)

Please see attached copy of petition for review incorporated by reference herein.

B. Ground two: _____

Supporting FACTS (state *briefly* without citing cases or law): _____

(5)

C. Ground three: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

D. Ground four: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack? Yes ☐   No ☑

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing   *Fred Baker  2 Henry Adam St.*
*Mezz. 46 San Francisco, CA 94103*
(b) At arraignment and plea   *Fred Baker* _____

_____

(c) At trial _Fred Baker (pled before trial)_

(d) At sentencing _Fred Baker_

(e) On appeal _Richard Such, First District Appellate Project 730 Harrison St. #201 San Francisco, CA 94107_

(f) In any post-conviction proceeding _Richard Such_

_tel (415) 495-3119_

(g) On appeal from any adverse ruling in a post-conviction proceeding _Richard Such_

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ✓  No

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes    No ✓
(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes    No

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_Benjamin Ramos_
Signature of Attorney (if any)
_7405 Greenback Ln. #287
Citrus Heights, CA 95610  967-2927_

I declare under penalty of perjury that the foregoing is true and correct. Executed (9/6)

_1/19/05_
(date)

Signature of Petitioner

(7)

JAN 29TH 2002

IN THE SUPREME OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA

No. _____

Plaintiff and Respondent

-vs-

CARLOS CHICO

Defendant and Appellant

_____/

(Court of Appeal
No. A092567)
(San Mateo County
Superior Court
No. SC042571A)

In re

CARLOS CHICO

Petitioner

on Habeas Corpus

_____/

(Court of Appeal
No. A096594)

## PETITION FOR REVIEW

**MATTHEW ZWERLING**
**Executive Director**

RICHARD SUCH, sbn 46022
  Staff Attorney
FIRST DISTRICT APPELLATE PROJECT
730 Harrison St. # 201
San Francisco, CA 94107
(415) 495-3119

Attorneys for Appellant/Petitioner
CARLOS CHICO

IN THE SUPREME OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA          No. _____

              Plaintiff and Respondent          (Court of Appeal
                            No. A092567)

          -vs-                          (San Mateo County
                            Superior Court
CARLOS CHICO                              No. SC042571A)

              Defendant and Appellant
_____/

In re

      CARLOS CHICO                        (Court of Appeal
                            No. A096594)

                Petitioner
on Habeas Corpus
_____/

## PETITION FOR REVIEW

**MATTHEW ZWERLING**
**Executive Director**

RICHARD SUCH, sbn 46022
  Staff Attorney
FIRST DISTRICT APPELLATE PROJECT
730 Harrison St. # 201
San Francisco, CA 94107
(415) 495-3119

Attorneys for Appellant/Petitioner
CARLOS CHICO

## TABLE OF CONTENTS

TABLE OF CASES ............................................................................... ii

PETITION FOR REVIEW ...................................................................  1

BRIEF IN SUPPORT OF PETITION ...................................................  7

    STATEMENT OF THE CASE ...............................................  7

    STATEMENT OF THE FACTS ............................................. 10

    STATEMENT OF THE LAW ................................................ 11

**I.    THE IMPOSITION OF THREE
       ENHANCEMENTS UNDER PENAL CODE
       SECTION 12022.53 WAS UNAUTHORIZED.** ......................... 11

    CONCLUSION ....................................................................... 18

i

## TABLE OF CASES

Keeler v. Superior Court (1979) 2 Cal.3d 619 ............................................. 4, 14, 15

People v. Gilbert (1969) 1 Cal.3d 475 .................................................................. 17

People v. Mason (Jan. 15, 2002) __ Cal.App.4th __,
        02 C.D.O.S. 435 (No. D035933 ...................................................................... 4

People v. Perez (2001) 86 Cal.App.4th 675 ................................................. 3, 15-17

Ratzlaf v. United States (1994) 510 U.S. 132 ...................................................... 14

United States v. Bass (1971) 404 U.S. 336 ....................................................... 5, 14

IN THE SUPREME OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA          No. _____

              Plaintiff and Respondent          (Court of Appeal
                                   No. A092567)
                   -vs-          (San Mateo County
                                Superior Court
CARLOS CHICO          No. SC042571A)

              Defendant and Appellant
_____/

In re

        CARLOS CHICO          (Court of Appeal
                                      No. A096594)

               Petitioner
    on Habeas Corpus
_____/

## PETITION FOR REVIEW BY THE SUPREME COURT

TO THE HONORABLE RONALD GEORGE, CHIEF JUSTICE, AND TO THE
HONORABLE ASSOCIATE JUSTICES OF THE CALIFORNIA SUPREME
COURT:

Appellant/petitioner  CARLOS CHICO hereby petitions for review by this

Court of the Opinion and Decision of the Court of Appeal for the First Appellate

District, Division Four, filed and certified for publication on December 21, 2001,

affirming the judgment in a criminal case (a copy of which is attached hereto as

1

Appendix A), which was modified by an Order filed January 2, 2002 (Appendix

B), and the Order of that court, also filed on December 21, 2001, denying a

Petition for a Writ of Habeas Corpus (Appendix C), on the ground that review by

this Court is necessary to settle important questions of law, to wit:

1. Is the language of Penal Code section 12022.53 (the "10/20/Life"

gun-use enhancement statute), limiting the imposition of a 10-, 20-, or 25-

to-life enhancement to "only one additional term ... *for each crime*",

ambiguous as to whether "each crime" refers to each violation of a statute,

each criminal act, or each criminal transaction?

2. Under the Rule of Lenity, is the defendant entitled to the more

favorable interpretation that the only one additional term may be imposed

for each criminal transaction?

3. Where the Legislature adopts a failed initiative measure, and

there is no indication in the entire body of legislative history materials that

the Legislature had any intent except to adopt the initiative measure, should

the courts consider the meaning of a term of the measure which was

intended by its author?

4. In this case, should the court consider that Mike Reynolds, the

author of the failed "10/20/Life" initiative measure which the Legislature

enacted as Penal Code section 12022.53, meant by the term "each crime" to

2

refer to "each criminal transaction"?

Penal Code section 12022.53 provides for enhancements of 10 or 20 years or 25-years-to-life for, respectively, the use, the discharge, and the infliction of bodily harm by a firearm during the commission of enumerated felonies. In some cases, a defendant may use a gun to commit an act which violates several statutes or constitutes multiple violations of the same statute. For example, a defendant may, in one criminal transaction, attempt to rob a busdriver, and commit not only robbery but also kidnaping, kidnaping for robbery, and carjacking, in violation of sections 207, 209, 211, and 215. For another example, if there were passengers on the bus, he might commit as many such violations as there were persons on the bus. The statute could be interpreted to provide for an enhancement for each one of those violations, which would add up to a sentence of enormous length, way out of proportion to the defendant's culpability.

In this case, the defendant and an accomplice robbed a market by pointing a gun at the owner and three employees. The result was that the defendant was convicted of four robberies, and, under the broad interpretation referred to above, was liable for four 10-year enhancements. In another case, a defendant shot two persons and received two 25-to-life enhancements. (People v. Perez (2001) 86 Cal.App.4th 675.) In yet another case, a defendant shot one person and attempted to rob (but did not shoot at) six other persons and received *seven* 25-to-life

3

enhancements. (People v. Mason (Jan. 15, 2002) __ Cal.App.4th __, 02 C.D.O.S. 435 (No. D035933).

This sort of problem was anticipated by the author of the measure which became section 12022.53, and subdivision (f) of that section was intended to limit the number of enhancements which could be added by providing that "only one additional term of imprisonment under this section shall be imposed per person *for each crime.*" But "each crime" is ambiguous. It may mean each violation of statute (as it was held to mean in this and the above cases), or it may mean each criminal act or each criminal transaction. Under the Rule of Lenity (see, e.g., Keeler v. Superior Court (1979) 2 Cal.3d 619, 631) the defendant is entitled to the benefit of every reasonable doubt as to the meaning of the words of a statute and to the most favorable interpretation.

Mike Reynolds, the sponsor of the Three Strikes Law, also sponsored an initiative measure, which he called the "10/20/Life" measure, which failed to qualify for the ballot. It was then taken up by the Legislature and enacted, almost word for word, as section 12022.53. The "each crime" language at issue here was part of the failed initiative measure which was carried over into section 12022.53. On habeas corpus in the Court of Appeal, appellant/petitioner/ petitioner showed (1) that by "each crime" Mike Reynolds meant "each criminal transaction" and that, specifically, he meant that where a person commits one criminal act against

4

several victims (e.g., an attempted robbery of all the patrons of a bar), there should be only one enhancement and (2) that the entire body of legislative history materials fails to show that the Legislature had any intent other than to adopt Mr. Reynolds' measure and, therefore, the meaning which he ascribed to "each crime."

The Court of Appeal held that there is no ambiguity in the term "each crime." The authority cited for that holding, however, consisting of quotations lifted out of cases which have distinguished the term "crime" from "criminal transaction" (Appendix A at pp. 5-6), actually proves the opposite: that there is a need for such distinction because "crime" can be used to refer to a "criminal transaction," even though, in strict usage, it refers only to a particular violation of a criminal statute.[1]

The Court of Appeal further held that it is not appropriate to consider the views of the author of the failed initiative measure which became the statute (Appendix A at pp. 6-9) but failed to address appellant/petitioner's argument that, if nothing else, the fact that the author ascribed a meaning to "each crime" *other*

---

[1] The Court of Appeal said that it is irrelevant how laymen understand "each crime" to refer to the entire criminal transaction – e.g., *a* bank robbery, not multiple *robberies* of several employees or customers of a bank. (Appendix, p. 4.) But that is a mistaken view of the law. As shown below, the rule of lenity is premised on the concept that "'fair warning should be given to the world in language *that the common world will understand*, of what the law intends to do if a certain line is passed.'" (United States v. Bass (1971) 404 U.S. 336, 347-350 [emphasis added].)

5

*than* "a particular violation of a criminal statute show that ***the term is ambiguous*** – i.e., normal English speakers mean different things by it.

Because the term is ambiguous, and because there is no expression of Legislative intent or policy which compels that the term be given the *least favorable* interpretation of it, the defendant, under the Rule of Lenity, is entitled to the *most favorable* interpretation.

WHEREFORE, appellant/petitioner prays that review be granted and that the judgment and sentence be reversed and enhancement for more that one use of a firearm under section 12022.53 be stricken from the judgment.

Dated: January 29, 2002                Respectfully submitted,


RICHARD SUCH
Staff Attorney
FIRST DIST. APPELLATE PROJECT
Attorneys for Petitioner
CARLOS CHICO

6

## BRIEF IN SUPPORT OF PETITION

## STATEMENT OF THE CASE

Appellant/petitioner Carlos Chico, born December 24, 1977, was charged by an Information No. SC042571A in the San Mateo County Superior Court with four counts of robbery (Pen. Code, § 212.5, subd. (c)) on January 23, 1998 (Counts 1-4), and one count of robbery on January 16, 1998 (Count 5). In connection with Counts 1-4, he was charged with a gun-use enhancement under the "10-20-life" law (Pen. Code, § 12022.53), and in connection with Count 5, he was charged an enhancement for being armed with a firearm (Pen. Code, § 12022, subd. (a)(1)). (ACT 1)

On July 13, 1998, the matter was sent out to trial, and appellant/petitioner pleaded guilty as charged. (ACT 1) His plea was based on a representation by the court that he would receive a sentence of between 12 years and 20 years/8 months in the court's discretion. (CT 7/13/98, pp. 5, 11) The 12-year minimum was based on the court's and district attorney's belief that, under the "10-20-life" law, there would be a mandatory minimum sentence of 12 years, and the 20-year "maximum" was based on an assessment by another judge during pre-trial negotiations. (Id., p. 5.) The district attorney later referred to the 20 years/8 months as an "indicated sentence", but she requested a sentence of 29 years. (RT 9/21/98, p. 6.)

On September 21, 1998, the court sentenced appellant/petitioner as follows:

7

Count 1: middle 3-year term, plus 10-year firearm-use enhancement;

Counts 2 and 3: two **consecutive** 1-year terms (one-third the middle term),

plus two 3-year/4-month consecutive terms for the fire-arm use

enhancement (one-third of 10 years);*

Count 4: a **concurrent** 1-year term (one-third the middle term),

plus a **concurrent** 3-year/4-month consecutive term for the fire-arm use

enhancement (one-third of 10 years);*

Count 5: a **concurrent** 1-year term (one-third the middle term).(Id., pp. 10-12.)

The total term was **21 years, 8 months**.  (CT 1-2, 4)

Appellant/petitioner moved to withdraw his plea on the ground that he had

been informed when he pleaded guilty that 20 years would not exceed 20 years, 8

months.  The judge denied the motion on the ground that the other judge had

"indicated that was probably where the case was going to come out" but that he did

not indicate what the sentence was going to be.  (Id., p. 13.)  The judge said that "I

don't believe there were any promises held out to Mr. Chico at all in his entering

his plea here in what his sentence would be ...."  (P. 14.)

Appellant/petitioner did not appeal but filed a petition for a writ of habeas

corpus in the Court of Appeal (No. A088430).  (CT 8)  That court issued an

---

\* Of course, since the terms were concurrent, there was no occasion to apply the
"one-third the middle base term" rule of Penal Code section 1170.1.

Order to Show Cause. (CT 12) In response thereto, the Deputy District Attorney, who stood silently by when the court imposed the 21-year/8-month term, wrote to the presiding judge (the original sentencing judge having retired), requesting him to modify the abstract of judgment by reducing the middle 3-year term for Count 1 to a lower, 2-year term. (CT 8-9) A modified abstract was filed on July 26, 2000, reducing the term for Count 1 as requested. (CT 13) This was apparently done *ex parte*, without a hearing in open court, and without the presence of appellant/ petitioner or his attorney (the modified abstract shows a "date of hearing" of "09-21-98" and that the judge was the retired judge, and the clerk and reporter his clerk and reporter). (Compare CT 13 with CT 4, 6, and 10)

9

## STATEMENT OF THE FACTS

These facts are taken from the probation report.

**Count 5.** On January 16, 1998, appellant/petitioner and co-defendant Bowen Bell, robbed the clerk of a Walgreen's drugstore in San Carlos. One of them pointed a handgun at her and ordered her to unlock the safe. The other robber, apparently appellant/petitioner, who was not armed, reached into the safe and removed $6500 in cash and checks. The robbers fled in a black sports car. Appellant/petitioner's fingerprints were found at the scene. (ACT 5-6)

**Counts 1-4.** A week later, on January 23, 1998, appellant/petitioner and Bell entered the business office of Roberts' grocery store in Woodside, where they encountered the owner and three clerks. Appellant/petitioner brandished a handgun and ordered the clerks to lie on the floor. Mr. Roberts was directed to remove the currency from a safe. The defendants fled with $8500 in 100s and 20s. The victims called 911, and a description of the suspects and a vehicle was broadcast. A police officer pursued the vehicle, which eventually collided with other vehicles at an intersection. The defendants fled on foot but were apprehended. (ACT 6-7)

### STATEMENT OF THE LAW

## I.    THE IMPOSITION OF THREE ENHANCEMENTS UNDER PENAL CODE SECTION 12022.53 WAS UNAUTHORIZED.

Appellant/petitioner was sentenced on Count 1 to a 2-year term for robbery, plus 10 years for use of a firearm under Penal Code section 12022.53 for that offense. He was also sentenced to two 1-year terms for robbery in Counts 2 and 3, plus two 3 1/3 year terms for use of a firearm under that section in connection with those offenses. Only one such enhancement was authorized.

Subdivision (f) of section 12022.53 provides that "only one additional term of imprisonment under this section shall be imposed per person for each crime."

The question is whether the robbery of Roberts' market was one crime or as many crimes as there were victims – i.e., one crime of robbing Roberts' market or four crimes of robbing Mr. Roberts and the three clerks.

Appellant/petitioner showed by the Declaration and Exhibits attached to his petition for writ of habeas corpus in the Court of Appeal, as well as by the legislative-history materials of which, at his request, that court took judicial notice, that the bill which became Penal Code section 12022.53 (AB 4, 1997-98) was intended to enact Mike Reynold's "10-20-Life" initiative measure, which failed to qualify for the ballot. As originally submitted to the Legislature, the bill which

11

became section 12022.53 was almost exactly the same as the initiative measure. The particular provision which is at issue here, subdivision (f), was the same in the measure and in the bill except for the substitution of the word "shall" for the word "must." (Compare Exhibit C with Exhibit D.)

As the bill proceeded through the Legislature not one word was expressed as to the meaning of the "each crime" language of that subdivision in any bill analysis or statement by the bill's author or supporters. (See legislative history materials.) It follows that the Legislature did not mean anything by "each crime" that the author or authors of the initiative measure did not mean. The question is, what did the latter intend by the phrase?

The legislative history material identifies Mike Reynolds as the "sponsor" of AB 4. Mike Reynolds is famous as the sponsor of the "Three Strikes and You're Out" initiative law. Appellant/petitioner's undersigned attorney wrote the letter attached to his habeas corpus petition as Exhibit A to Mr. Reynolds and asked him what he meant by "each crime." Appellant/petitioner showed by his attorney's declaration that Mr. Reynolds called the attorney on the telephone and told him he meant *each criminal transaction.* The attorney gave him an example of someone who used a gun in an attempt to rob twelve persons and asked him if, according to what he meant by the phrase, one 10-year enhancement or multiple enhancement would be appropriate, and he said one such enhancement. Mr.

12

Reynolds told the attorney that he would write him a letter confirming that intent after he checked with Justice James Ardaiz, who he said helped him draft the initiative measure, and Contra Costa County Deputy District Attorney Douglas Pipes.

The attorney did not hear again from Mr. Reynolds. The next day he received an e-mail, Exhibit B, from Mr. Pipes who claimed that the "each crime" language had been added to the bill after it was introduced. Appellant/petitioner's attorney wrote to Mr. Pipes the letter, Exhibit E, showing that Mr. Pipes was mistaken because, as Exhibits C and D show, the "each crime" language was present in the initiative measure and in the bill as first submitted to the Legislature and arguing that Mr. Pipes was mistaken in thinking that the Legislature's intent superceded that of the drafters of the initiative measure, because the legislative history fails to show that anyone in the Legislature had any intent other than to enact Mr. Reynolds's language and, therefore, the meaning that he attached to the language. Mr. Pipes did not dispute that Mr. Reynolds told appellant/petitioner's attorney that, by "each crime," he meant each criminal transaction.

In the entire body of legislative history materials, there is no indication that the Legislature attributed any meaning to "each crime" that Mr. Reynolds did not attribute to it. Indeed, there is no indication that anyone in the Legislature gave any consideration to the meaning of the term.

13

Thus, there is no indication of the Legislature's intent except the language used and whatever can be known or surmised about the significance that Mr. Reynolds attached to the term. The probability is that he meant the same thing that he meant in the "Three Strikes" initiative measure by felony counts which arise "from the same set of operative facts" (in which case consecutive terms are not mandatory). (Pen. Code, § 1170.12, subd. (a)(6).)

In any case, the term is ambiguous. Under the "rule of lenity" appellant/petitioner is entitled to the most favorable construction, which would be that "each crime" means "each crime arising from the same set of operative facts" – i.e., the "same criminal transaction." (United States v. Bass (1971) 404 U.S. 336, 347-350 [the rule of lenity is premised on the concept that "'fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed'"]; Ratzlaf v. United States (1994) 510 U.S. 132, 148; Keeler v. Superior Court (1970) 2 Cal.3d 619, 631 ["It is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit; just as in the case of a question of fact, the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute"].)

On the facts of this case, there was only one criminal transaction – one

14

"crime" – of which there were four victims, Mr. Roberts and the three clerks.

Appellant/petitioner and his accomplice pointed their guns at the four persons

simultaneously and ordered the clerks to lie on the floor and Mr. Roberts to empty

the safe. The judge recognized this at the sentencing hearing when he said that

"the offense [singular] there at Roberts' ... [had] some of the attributes of a single

offense with multiple victims." (RT 9/21/98, p. 10.)

The statutory reference to "each crime" informed the public that a gun-use

enhancement would be applied only once for each criminal episode. Appellant/

petitioner was not given <u>fair warning</u> that as many enhancements might be applied

as there were persons present during the robbery. (<u>United States v. Bass, supra,</u>

404 U.S. 336, 347-350 .)

**Even if Mr. Reynolds's intent as to the meaning of "each crime" were**

**not necessarily the same as the Legislature's intent, the mere fact that he**

**meant by that phrase "each criminal transaction" is enough to show that**

**there is a *reasonable doubt* as to the meaning of it – i.e., different people can**

**interpret it different ways – and appellant/petitioner must be given the benefit**

**of that doubt and the more lenient interpretation. (<u>Keeler v. Superior Court,</u>**

**<u>supra</u>, 2 Cal.3d 619, 631.)**

The Court of Appeals' reliance on <u>People v. Perez, supra</u>, 86 Cal.App.4th

675 was mistaken. In that case, the defendant murdered one person and attempted

to murder another, with a firearm.[2]  He received a 25-to-life enhancement to the

term for each crime for discharging a firearm and causing great bodily injury to the

two victims under subdivision (d) of section 12022.53.  He contended that he

should have received only one such enhancement.  His argument was not based on

the "for each crime" language of the first sentence of subdivision (f) but on the

"per person" language.[3]  He contended that the provision meant that, no matter

how many separate acts or crimes or criminal transactions a person committed, that

person could receive only one enhancement under section 12022.53.  (See the copy

of the Appellant's Opening Brief in Perez, p. 40, a copy of which was attached to

Appellant's Opening Brief in the Court of Appeal, and of which judicial notice

was and is requested under Evidence Code, sections 452, subd. (a) and 459, subd.

(a ).)  He argued that the language of the second sentence of subdivision (f)

supported that interpretation.  The Fifth District panel noted that any ambiguity

introduced by the second sentence was cleared up by a 1998 amendment.  (People

---

[2] These were not simultaneous acts.  The record in Perez, of which appellant
requests judicial notice (Evid. Code, §§ 452, subd. (a); 459, subd. (a ); People v
Hayes (1990) 52 Cal.3d 577, 611, fn. 3 [court takes notice of records of other case
attached to brief] and cases cited), shows that the defendant shot and killed his ex-
brother-in-law in an apartment, then his ex-sister-in-law struggled with him for
possession of the gun, and during the struggle the gun was discharged twice,
wounding her in the head and shoulder.  The defendant left the apartment, re-
entered, argued with the woman, and then beat her on the head with the gun.

[3] "Only one additional term of imprisonment under this section shall be
imposed per person for each crime."

16

v. Perez, supra, p. 682.)  The panel *said* that "this construction ignores the plain language of the first sentence, which makes clear that the subdivision (f) limitation applies 'for each crime,' not each criminal."  (Id., at p. 681.)  But in doing so, it was merely repeating the language of the first sentence, and it did not purport to analyze the meaning of "each crime."    Anything implied about the meaning of those words was mere *dictum*, since the court cannot have decided a point which was not raised.  (People v. Gilbert (1969) 1 Cal.3d 475, 482, fn. 7.)

Further, the Perez court did not consider the legislative history of section 12022.53 and its bearing on the meaning of "each crime."  On habeas corpus and by means of the documents in the bill files of which appellant requested judicial notice, it is shown that the relevant language of subdivision (f) was taken verbatim from Mike Reynold's "10/20/Life" initiative measure and that by "each crime" Mr. Reynolds meant "each criminal transaction."

Therefore, the 3 1/3-year terms for the 12022.53 enhancements attached to Counts 2 and 3 should be stricken.

## CONCLUSION

For the foregoing reasons, a writ of habeas corpus should be granted, the judgment should be reversed, and the two 3 1/3-year terms for the 12022.53 enhancements to Counts 2 and 3 should be stricken.

Dated: January 29, 2002                    Respectfully submitted,


RICHARD SUCH
  Staff Attorney
FIRST DIST. APPELLATE PROJECT
  Attorneys for Appellant/petitioner
  CARLOS CHICO

18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARLOS CHICO,<br><br>    Defendant and Appellant. | A092567<br><br>(San Mateo County<br>Super. Ct. No. SC042571A) |
| In re CARLOS CHICO,<br><br>    on Habeas Corpus. | A096594 |

Carlos Chico was sentenced to state prison after pleading guilty to five counts of robbery. On appeal, and by associated petition for habeas corpus, he contends that the trial court erred by imposing a consecutive firearms use enhancement under Penal Code section 12022.53, subdivision (f) (§ 12022.53(f)), for each of four counts stemming from defendant's simultaneous robbery of four victims at gunpoint.[1] We hold that section 12022.53(f) contemplates a separate enhancement for each separately punishable underlying offense, and was thus properly applied here. Accordingly, we affirm the judgment.

## BACKGROUND

According to the facts recited in the probation report, defendant and a companion robbed a drug store in San Carlos on January 16, 1998. In the course of the robbery

---

[1] All further statutory references are to the Penal Code.

APPENDIX A

1

defendant's companion held a store employee at gunpoint. A week later, defendant and the same companion robbed a market in Woodside. On this occasion defendant pointed a handgun at three clerks and the store's owner, whom he ordered to remove and deliver cash from an open safe. Defendant was charged with five counts of second degree robbery in violation of section 212.5, subdivision (c). The first four counts, one for each victim, stemmed from the Woodside incident. As to each of these, it was alleged that he used a firearm so as to be subject to an enhancement under section 12022.53. As to the fifth count, which grew out of the San Carlos robbery, he was charged with an enhancement under section 12022, subd. (a)(1), based on being armed with a firearm.

Defendant pleaded guilty to all counts. The trial court sentenced him to 21-2/3 years, consisting of a 3-year base term on count one, consecutive 1-year terms on counts 2 and 3, a 10-year firearms enhancement on count 1, and consecutive enhancements of 3-1/3 years on counts 2 and 3, with concurrent terms and enhancements on counts 4 and 5. On defendant's petition for habeas corpus, we issued an order to show cause why the sentence should not be vacated for exceeding an indicated sentence of 20-2/3 years. While that matter was pending before this court, the trial court modified the sentence by reducing the base term on count 1 to 2 years, thereby reducing the total sentence to 20-2/3 years. This appeal followed.

## DISCUSSION

### I.
### CERTIFICATE OF PROBABLE CAUSE

Defendant's sole contention is that the sentence reflects a misapplication of section 12022.53(f) insofar as it imposes consecutive enhancements based upon the multiple victims in the Woodside robbery. Respondent replies that (1) this point is not available on appeal because it amounts to a challenge to the plea bargain and defendant did not obtain a certificate of probable cause as required by section 1237.5; and (2) on the merits, the sentence reflects a proper application of the statute.

We reject respondent's argument that this appeal challenges the validity of the

2

APPENDIX A

plea and thus requires a certificate of probable cause. In the cases cited by respondent, a defendant attempted to challenge a specific negotiated sentence. (*People v. Panizzon* (1996) 13 Cal.4th 68 [life imprisonment plus 12 years]; *People v. McNight* (1985) 171 Cal.App.3d 620 [prison term of 21 years].) Respondent would have us extend these authorities to any sentence falling under a negotiated *ceiling*. On its face, such an agreement contemplates that the trial court will arrive at a sentence by a lawful exercise of discretion, as in nonnegotiated cases, but subject to the constraints of the bargain. We do not believe a challenge to the sentencing calculus in such a case constitutes, in substance or form, a challenge to the validity of the plea. It therefore does not require a certificate of probable cause.

## II.
### MULTIPLE ENHANCEMENTS

On the merits, we hold that section 12022.53(f) contemplates multiple enhancements where a defendant uses a firearm in a robbery, or similar crime of violence, against multiple victims.

Section 12022.53, subdivisions (b) through (d), provide additional terms of imprisonment of 10 years, 20 years, and 25 years to life, respectively, for anyone who, in the commission of specified felonies, uses a firearm, discharges a firearm, or discharges a firearm causing great bodily injury. Subdivision (f) provides, "Only one additional term of imprisonment under this section shall be imposed per person *for each crime*. If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment. An enhancement involving a firearm specified in Section 12021.5, 12022, 12022.3, 12022.4, 12022.5, or 12022.55 shall not be imposed on a person in addition to an enhancement imposed pursuant to this section . . . ." (Italics added.)

Defendant contends that the phrase "for each crime" is ambiguous where a defendant engages in a single instance of criminal conduct against multiple victims. He concedes that "[a]s lawyers use the term 'crime,' there may have been four crimes."

**APPENDIX A**

3

However, he contends, "*laymen* do not use the term to refer to the multiple violations that almost every criminal episode can be divided into." (Italics added.) Instead, the argument goes, laypersons think of a "crime" as comprising the *conduct* punishable by criminal law. Thus, in accordance with the rule of lenity, which resolves ambiguities in favor of the accused, section 12022.53 must be construed to permit only one enhancement for each instance of *conduct* for which the defendant is being punished.

We reject the premise that the term "crime" is rendered ambiguous by the lay meaning that defendant attributes to it. "It is true that courts ordinarily give the words of a statute the usual, everyday meaning they have in lay speech. [Citation.] But that rule has an important exception . . .: when a word used in a statute has a well-established legal meaning, it will be given that meaning in construing the statute. This has long been the law of California . . . . [¶] . . . . The rule applies most obviously when the meaning of the word in question is wholly or primarily legal. [Citations.] But the rule is also applicable when the word has both a specific legal meaning and a more general sense in informal legal usage or in lay speech. [Citations.] In that event the lawmakers are presumed to have used the word in its specifically legal sense." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19-20, italics omitted; see § 7, subd. (16) ["Words and phrases must be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning."].)

The term "crime" has a "well-established legal meaning": a breach of duty punishable by the criminal law. (See Black's Law Dict. (7th ed. 1999) p. 377 [defining "crime" as "[a] social harm that the law makes punishable; the breach of a legal duty treated as the subject-matter of a criminal proceeding."].) Where a single act breaches more than one duty and each such breach is separately and additionally punishable—as where a single act of violence is directed against multiple victims—multiple crimes have been committed.

This meaning is not contrary to the lay definition, but refines and qualifies it. In

4                                      APPENDIX A

lay usage, there is rarely an occasion to distinguish between conduct violating the
criminal law, and the violation of law in and of itself. So complete is the lay conflation
of these concepts that one popular dictionary gives both meanings not as alternatives but
as variants of a single definition. (Webster's Ninth New Collegiate Dict. (1984) p. 307
[defining "crime" as "an act or the commission of an act that is forbidden or the omission
of a duty that is commanded by a public law and that makes the offender liable to
punishment by that law; *esp.*: a gross violation of law"].)

     In any event, in legal usage the word "crime," when used advisedly, refers not to a
particular instance of conduct, but to a particular violation of a criminal statute.
Consistent with this conception, courts have spoken of situations in which "an act
violates more than one statute and thus constitutes more than one crime." (*People v.
Akins* (1997) 56 Cal.App.4th 331, 338; see 1 Witkin, Cal. Criminal Law (3d ed. 2000)
Elements, § 24, p. 230, italics added ["Even though separate *crimes* are charged and
proved, P.C. 654 provides that there can be only one punishment . . . for a *single act* or
omission"].) Similarly, in *People v. Deloza* (1998) 18 Cal.4th 585, the court referred to
the robbery of multiple victims as "robberies" and "crimes," even while holding that
"they were clearly committed on the 'same occasion.' " (*Id*. at pp. 595-596.) In *People
v. Lawrence* (2000) 24 Cal.4th 219, 223, the court analyzed *Deloza* in depth, again
referring to "the defendant's *crimes*" in that case. (Italics added; see *id*. at p. 227.) Many
other courts have described convictions of multiple-victim offenses, including robbery, as
involving multiple "crimes." (E.g., *People v. Bonner* (2000) 80 Cal.App.4th 759, 765,
italics added [defendant guilty of two attempted robberies where he planned to steal hotel
receipts from manager and assistant manager; "at the moment appellant entered the
garage, he intended to rob both the manager and assistant manager. Any later event that
interrupted those *crimes* was irrelevant to appellant's liability . . . ."]; *id*. at p. 764 ["had
he actually confronted the two in the garage but been interrupted before completing the
*crimes*, he could properly be convicted of two counts of attempted robbery"]; *In re
Asean D*. (1993) 14 Cal.App.4th 467, 474-475 ["robberies" committed by stealing car
from two occupants were separately punishable under principle that section 654 does not

**APPENDIX A**

5

bar "separate punishments for separate *crimes* of violence committed against separate victims" (italics added)]; *People v. Ramos* (1982) 30 Cal.3d 553, 587 [under multiple victim exception to section 654, defendant "may be convicted and punished for *each crime* of violence committed against a different victim" in single course of conduct], revd. on other grounds, *California v. Ramos* (1983) 463 U.S. 992; *People v. Lagomarsino* (1950) 97 Cal.App.2d 92, 98, italics added ["California . . . has definitely aligned itself with those states that hold that, so far as crimes against the person are concerned (murder, assault, robbery, etc.), although there may be but one act or intent, there are *as many crimes as there are persons* affected."]; *id.* at p. 99 ["a *separate crime* exists as to each person harmed by the act of defendant"]; *People v. Plumlee* (1960) 177 Cal.App.2d 224, 227 [quoting *Lagomarsino*]; *People v. Galvin* (1957) 148 Cal.App.2d 285, 293 [citing *Lagomarsino* in rejecting claim that two multiple-victim robberies "constitute[d] but one, or, at most, two crimes"; "In crimes against the person, there are as many offenses as persons affected."])

In the absence of some sound reason to the contrary, we must conclude that when the Legislature enacted section 12022.53(f), it had in mind the accepted legal meaning of "crime" as a distinct, separately and additionally punishable violation of the criminal law.

In an attempt to dissuade us from this conclusion, defendant asserts that section 12022.53(f) originated as a proposed initiative measure, which the Legislature "mirrored" in the statute.[2] He asserts that the legislative history contains "no indication that the

---

[2] In some of the committee reports for the bill that became section 12022.53, Mike Reynolds, whom defendant describes as the author of the failed "10-20-Life Initiative," is listed as the "source" of the bill. (See Sen. Rules Com., Off. of Floor Analyses, Rep. on Assem. Bill No. 4, as amended Sept. 10, 1997; Sen. Com. on Public Safety, Rep. for Assem. Bill No. 4, for hearing date July 8, 1997.) Another report notes that the bill was "virtually identical" to Assembly Bill No. 892 in the previous session, which was "also similar to a proposed 1995 initiative by three strikes supporters that failed to collect sufficient signatures." (Assem. Com. on Appropriations, Rep. on Assem. Bill. No. 4, for hearing date May 14, 1997, p. 2.)

The aforementioned Assembly Bill No. 892 was described during its course through the Legislature as "mirror[ing] a measure presently attempting to qualify as a state ballot

6

APPENDIX A

Legislature attributed any meaning to 'each crime' " other than that intended by the drafter of the initiative measure. He further asserts that the drafter intended the term "crime" to mean a single criminal transaction, such that a robbery simultaneously perpetrated against multiple victims will support only one enhancement under section 12022.53. In the companion petition for habeas corpus, defendant offers support for this reading in the form of private correspondence with the drafter and another proponent of the statute. He prays for an evidentiary hearing "in particular to permit [defendant] an opportunity to examine [the drafters] . . . as to the meaning of the 'each crime' language . . . ."

We reject the proposition that when the Legislature enacts a proposed but unadopted initiative into law, the effect of the resulting statute may be determined by consulting the drafters or supporters of the initiative, or is otherwise affected by the meanings they might have attached to the words used. Even the personal understanding of an individual *legislator*, including a bill's author, is relevant only insofar as it might be inferred to have been acted upon by the Legislature as a body. (See *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589 ["In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it . . . . Nor do we carve an exception to this principle simply because the legislator whose motives are proffered actually authored the bill in controversy."] ; cf. *id.* at p. 590, italics in original [author's letter, published by unanimous resolution in legislative journal, as to intent of bill enacted in previous session, was worthy of consideration because it gave "evidence of *more* than the personal understanding of the letter's author" in that it stated not only his own intent "but that he *argued* to that effect in obtaining the bill's passage"], citing *Rich v. State Board of Optometry* (1965) 235 Cal.App.2d 591, 603 [assemblyman's

---

initiative." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 892, for hearing January 9, 1996, p. 5.) Later in that session it was reported that the initiative measure had failed to qualify for the ballot. (Sen. Com. on Crim. Procedure, Rep. on Assem. Bill No. 892, for hearing July 2, 1996, pp. 6-7.)

**APPENDIX A**

7

testimony properly considered where it "was not an expression of his own opinion . . . but a reiteration of the discussion and events which transpired in the Assembly committee hearing when the amendments . . . were under consideration."].)

Nowhere in defendant's argument do we see any basis to suppose that the understanding assertedly held by the initiative's author was communicated to or acted upon by the Legislature as a body. Defendant's showing is therefore inadequate to support a departure from the well-established legal meanings of the terms chosen.

Nor does it appear that an inquiry into legislative history would otherwise assist defendant. Defendant has not directed us to any affirmative indication of the Legislature's actual intent, and such relevant discussion as we have found tends to establish that the purpose of subdivision (f) was to address not the situation before us but the natural effect of the *mutual inclusiveness* of the three enhancements set forth in section 12022.53. The statute imposes progressively more severe penalties for use of a firearm, discharge of a firearm, and injurious discharge of a firearm. Of logical necessity, any person who engages in the more serious forms of conduct thereby engages in the lesser as well. Thus one who discharges a firearm necessarily *uses* a firearm, and one who *injuriously* discharges a firearm necessarily commits the lesser acts of discharging and using a firearm. Without legislative guidance it would be possible to argue that one who commits the more serious of these acts is thereby subjected not only to the aggravated penalty but also to the lesser penalties for the lesser, necessarily included conduct. The purpose of subdivision (f), insofar as it is pertinent here, is to preclude such an argument by clarifying that if a more severe enhancement applies, that enhancement alone may (and must) be imposed.

This intention is reflected in the only legislative explication we find in the legislative history. It appears not in the history of the bill that actually became section 12022.53(f), but in a committee report concerning Assembly Bill No. 892, the failed bill from the previous session, which was later described as "virtually identical" to the bill that was eventually adopted. (Assembly Com. on Appropriations, Rep. on Assem. Bill No. 4, for hearing date May 14, 1997, p. 2.) Like the current statute, the earlier bill

8

APPENDIX A

contained a subdivision (f), which allowed only one enhancement "for each crime."
(Assem. Bill No. 892 (1995-1996 Session) as amended Jan. 9, 1996.) Multiple legislative
reports described the effect of this limitation as follows (italics added): "Only one of *the
enhancements described above* shall be imposed for each crime. If more than one
applies, only the greatest one found true shall be imposed by the court." (Assem. Com.
on Public Safety, Rep. on Assem. Bill No. 892, for hearing January 9, 1996, p. 4; Assem.
Third Reading, Assem. Bill No. 892, as amended Jan. 23, 1996, p. 2.) The italicized
language is, of course, a reference to the three escalating, and overlapping,
enhancements.

       In short, such of the legislative history as we have reviewed establishes only that
the purpose of the subdivision is to ensure that a defendant who engages in one of the
more aggravated forms of firearms use will receive the aggravated punishment, but will
not be *additionally* punished by virtue of the necessary inclusion of the lesser forms of
misconduct.

       We derive further support for our rejection of defendant's arguments from *People
v. Perez* (2001) 86 Cal.App.4th 675, 682. The defendant there shot his wife's sister and
brother-in-law, the latter fatally, in a domestic dispute. He was convicted of murder and
attempted murder, and received two 25-to-life enhancements under section 12022.53. On
appeal he contended that section 12022.53(f) authorized only one enhancement "per
person" and that this could "only be read to mean that if multiple enhancements are found
true under section 12022.53, only a single enhancement can be imposed." (*Id.* at p. 681.)
In rejecting this contention, the court declared that "the plain language of the first
sentence . . . makes clear that the subdivision (f) limitation applies 'for each crime,' not
each criminal." (*Ibid.*) "Under the plain meaning rule of statutory construction,
defendant's contention must be rejected. The first sentence of [section 12022.53,]
subdivision (f) presents no ambiguity as to the Legislature's intent to apply a limitation to
one enhancement per crime." (*Id.* at p. 681.) The court then observed that even if
subdivision (f) were ambiguous, the ambiguity had been resolved by a legislative
declaration of intent accompanying a subsequent corrective amendment. (*Id.* at p. 682,

9

**APPENDIX A**

quoting Stats. 1998, ch. 936, § 28.) While this declaration is not directly applicable to the ambiguity asserted by defendant, its adoption without addressing or even acknowledging any such ambiguity further distances the statute from any interpretation based upon supposed "lay" meanings. Moreover, the court went on to reason that the defendant's interpretation there—like defendant's here—would conflict with the overall legislative purpose of the statute: "[U]nder defendant's proposed construction, a criminal using a firearm could go on a shooting spree, injure or kill numerous victims, and receive only one enhancement for the gun use, as though he had injured just one victim. In light of the legislative intent to promote public safety and discourage the use of guns, such a construction would frustrate rather than promote the Legislature's declared intent in enacting and amending the statute. Therefore, it is rejected." (*Ibid.*)

The judgment is affirmed.

**APPENDIX A**

_____

Sepulveda, J.

We concur:

_____

Reardon, Acting P.J.

_____

Kay, J.

*People v. Chico* (A092567)

**APPENDIX A**

11

RECEIVED

JAN 0 3 2002

First District
APPELLATE Project

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

### DIVISION FOUR

FILED

Court of Appeal - First App. Dist.

JAN 0 2 2001

RON D. BARROW, CLERK

By _____
DEPUTY

THE PEOPLE,

    Plaintiff and Respondent,

v.

CARLOS CHICO,

    Defendant and Appellant.

A092567

(San Mateo County
Super. Ct. No. SC042571A)
ORDER MODIFYING OPINION
[NO CHANGE IN JUDGMENT]

BY THE COURT:

The opinion filed herein on December 21, 2001, is modified as follows:

The caption is changed by deleting "In re CARLOS CHICO, on Habeas Corpus" together with the case number (A096594).

This modification does not effect a change in the judgment.

Date: ____JAN 0 2 2002____ REARDON, ACTING P.J. ____ Acting P. J.

APPENDIX B

1



COURT OF APPEAL, FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA  94102
DIVISION 4

IN RE CARLOS CHICO ON HABEAS CORPUS.

A096594
San Mateo County No. SC042571A

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Reardon, Acting P.J., Sepulveda, J. and Kay, J. joined in the decision.)

Date: ____DEC 2 1 2001____          REARDON, ACTING P.J.____P.J.

APPENDIX C

## PROOF OF SERVICE BY MAIL

I, BONNIE PALMER, say:

I am over the age of eighteen years, a citizen of the United States, and a resident of Contra Costa County, California. My business address is 730 Harrison St., #201, San Francisco, CA, 94107. On January 30, 2002, I served a copy of Appellant/Petitioner's Petition for Review on the following persons by placing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Francisco, California, addressed as follows:

Attorney General
455 Golden Gate Ave. # 11000
San Francisco, CA 94102

District Attorney
San Mateo County
400 County Center
Redwood City, CA 94063

Clerk, Superior Court
San Mateo County
Hall of Justice
401 Marshall St.
Redwood City, CA 94063

Clerk, Court of Appeal
First Appellate District, Div. 4
350 McAllister St.
San Francisco, CA 94102 (Hand Delivery)

Carlos Chico


I declare under penalty of perjury that the foregoing is true and correct.

Executed this $30$ of January, 2002, at San Francisco, California.


_Bonnie Palmer_
BONNIE PALMER



Court of Appeal, First Appellate District, Division Four - No. A092567

**S104024**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

CARLOS CHICO, Defendant and Appellant.

RECEIVED

OCT 3 0 2003

First District
APPELLATE Project

SUPREME COURT

**FILED**

OCT 2 9 2003

**Frederick K. Ohlrich Clerk**

DEPUTY

---

Pursuant to rule 29.3(b), California Rules of Court, the above-entitled review is DISMISSED and cause is remanded to the Court of Appeal, First Appellate District, Division Four.

| | |
|---|---|
| | George |
| | *Chief Justice* |
| | Kennard |
| | *Associate Justice* |
| | Baxter |
| | *Associate Justice* |
| | Werdegar |
| | *Associate Justice* |
| | Chin |
| | *Associate Justice* |
| | Brown |
| | *Associate Justice* |
| | Moreno |
| | *Associate Justice* |

RECEIVED

Court of Appeal, Second Appellate District, Division Four - No. A096594

**S104121**

MAR 2 8 2002

First District
Project

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re CARLOS CHICO  on Habeas Corpus

Petition for review DENIED.

Chin, J., was absent and did not participate.

SUPREME COURT
**FILED**

MAR 2 7 2002

**Frederick K. Ohlrich Clerk**

DEPUTY

GEORGE

Chief Justice

Court of Appeal, First Appellate District, Division Four - No. A092567
**S104024**

# IN THE SUPREME COURT OF CALIFORNIA

RECEIVED

MAR 2 8 2002

First District
APPELLAT

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

CARLOS CHICO, Defendant and Appellant;

SUPREME COURT
**FILED**

MAR 2 7 2002

Frederick K. Ohlrich Clerk

DEPUTY

Petition for review GRANTED.

Further action in this matter is deferred pending consideration and disposition of a related issue in *People v. Buttram*, S103761 (see Cal. Rules of Court, rule 29.2 (c )), or pending further order of the court. Submission of additional briefing, pursuant to California Rules of Court, rule 29.3, is deferred pending further order of the court.

Chin, J., was absent and did not participate.

George
_____
*Chief Justice*
Kennard
_____
*Associate Justice*
Baxter
_____
*Associate Justice*
Werdegar
_____
*Associate Justice*

_____
*Associate Justice*
Brown
_____
*Associate Justice*
Moreno
_____
*Associate Justice*

## DECLARATION OF SERVICE BY MAIL

Case Name:    In re Carlos Chico

Case No.:

          I am employed in the county of Sacramento, State of California.  I am over the age of 18 and not a party to the within action; my business address is:

> **Law Office of Benjamin Ramos**
> **7405 Greenback Lane #287**
> **Citrus Heights, CA  95610-5603**

          On __1 / 24__ , 2005, I served the following documents: PETITION FOR WRIT OF HABEAS CORPUS by placing a true copy thereof  into a sealed envelope with postage thereon, into the United States mail, addressed as follows:

Office of the Attorney General
1300 I Street
P.O. Box 944255
Sacramento, CA  94244-2550

Rosanne Campbell, Warden (A)
Mule Creek State Prison
4001 Highway 104
Ione, CA  95640

          I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on __1/24__ , 2005, at __Citrus Heights__ , California.

Benjamin Ramos

AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

# United States District Court

District _Eastern_

Name _Carlos Chico_

Prisoner No. _P-13303_     Case No.

Place of Confinement _Mule Creek State Prison  B-7-230_
_P.O. Box 409000_
_Ione, CA 95640_

Name of Petitioner (include name under which convicted)

_Carlos Chico_

Name of Respondent (authorized person having custody of petitioner)

v. _Rosanne Campbell, Warden (A)_

The Attorney General of the State of:

## PETITION

1. Name and location of court which entered the judgment of conviction under attack _Superior Court,_
_San Mateo County, California, Case # SC042571A_

2. Date of judgment of conviction _July 13, 1998_

3. Length of sentence _20 years + 8 months_

4. Nature of offense involved (all counts) _Robbery, four counts (P.C. §211.5)_
_armed enhancement (P.C. § 12022 subd.(a)(1)._

5. What was your plea? (Check one)
   (a) Not guilty ☑
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐   No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☑   No ☐

(2)

## NOTICE OF AVAILABILITY OF A MAGISTRATE JUDGE

## TO EXERCISE JURISDICTION AND APPEAL INSTRUCTIONS

You are hereby notified in accordance with 28 U.S.C §636(c), F.R.Civ.P.73 and Local Rule 73–305, the United States Magistrate Judges sitting in Sacramento and Fresno are available to exercise the court's case dispositive jurisdiction and to conduct any or all case despositive proceedings in this action, including motions to dismiss, motions for summary judgment, a jury or nonjury trial, and entry of a final judgment.  Exercise of this jurisdiction by a Magistrate Judge is however, permitted only if all parties voluntarily consent.  You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's case dispositive jurisdiction from being exercised by a Magistrate Judge.

Any appeal from a judgment entered by a Magistrate Judge is taken directly to the United States Court of Appeals for the Ninth Circuit or, where appropriate, for the Federal Circuit in the same manner as an appeal from any other judgment of a District Court.

Whether or not the parties consent to pursuant to 28 U.S.C. § 636(c) the assigned Magistrate Judge will hear all motions except those case dispositive motions set forth in 28 U.S.C. § 636(b)(1)(A).

A copy of the Form for "Consent to / Decline of Jurisdiction of United States Magistrate Judge" is attached hereto for pro per use and attorney information.  This form is available in fillable .pdf format on the court's web site at www.caed.uscourts.gov for all attorney ECF filers. This form must be returned to the Clerk's Office not later than 20 days following your first appearance, answer or responsive pleading through ECF at https://ecf.caed.uscourts.gov or by pro per litigants to the appropriate Clerk's Office location.

Office of the Clerk

501 I Street, Room 4–200

Sacramento, CA 95814

Office of the Clerk

1130 "O" Street , Room 5000

Fresno, CA 93721

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CARLOS CHICO,**
    Plaintiff(s)/Petitioner(s),

vs.

CASE NO. **2:05–CV–00146–MCE–PAN**

**ROSANNE CAMPBELL,**
    Defendant(s)/Respondents(s).

---

**IMPORTANT**
    CHECK AND SIGN ONLY ONE SECTION OF THIS FORM, THEN RETURN IT TO THE CLERK'S OFFICE NOT LATER THAN 20 DAYS FOLLOWING YOUR FIRST APPEARANCE, ANSWER OR RESPONSIVE PLEADING.

---

☐   **CONSENT TO JURISDICTION OF**
**UNITED STATES MAGISTRATE JUDGE**

    In accordance with the provisions of Title 28, U.S.C. Sec. 636(c)(1), the undersigned hereby voluntarily consents to have a United States Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment, with direct review by the Ninth Circuit Court of Appeals, in the event an appeal is filed.

    Date: _____      Signature: _____

                                Print Name: _____
                                  ( ) Plaintiff/Petitioner ( ) Defendant/Respondent
                                  ( ) Counsel for *_____

---

☐   **DECLINE OF JURISDICTION OF**
**UNITED STATES MAGISTRATE JUDGE**

    Pursuant to Title 28, U.S.C. Sec 636(c)(2), the undersigned acknowledges the availability of a United States Magistrate Judge but elects to have this case randomly assigned to a United States District Judge.

    Date: _____      Signature: _____

                                    Print Name: _____
                                  ( ) Plaintiff/Petitioner ( ) Defendant/Respondent
                                  ( ) Counsel for *_____

---

*If representing more than one party, counsel must indicate name of each party responding.*

## UNITED STATES DISTRICT COURT
## EASTER DISTRICT OF CALIFORNIA

Sacramento Clerk's Office                                          Fresno Clerk's Office

501 I Street, Room 4–200                                   1130 "O" Street , Room 5000

Sacramento, CA 95814–2322                                        Fresno, CA 93721

916–930–4000                                                     559–498–7235

### January 24, 2005

**Case Number:**     **2:05–CV–00146–MCE–PAN**

**Case Title:**     **CARLOS CHICO,**          **vs.  ROSANNE CAMPBELL,**

**Dear Litigant,**

You are hereby notified that the above case number has been assigned to your action.   You are to include it on all correspondence (i.e. letters, pleadings, and inquiries) sent to the court. Failure to do so results in delayed processing of your documents(s).

All matters in this action shall be sent to the following address until further notice:

**Cases beginning with the number 1:**          **Cases beginning with the number 2:**

**Office of the Clerk**                          **Office of the Clerk**
**United States District Court**                 **United States District Court**
**Eastern District of California**               **Eastern District of California**
**1130 "O" Street , Room 5000**                  **501 "I" Street, 4–200**
**Fresno, CA 93721**                             **Sacramento, CA 95814**

For timely processing of your pleadings or correspondence, please comply with our Local Rules of Court, in particular:

**Local Rule 5–134** The court requires an <u>original plus one copy</u> of all pleadings, motions, correspondence, etc., sent for filing.   If you desire to receive a conformed copy for your records, you must send a third copy of your pleading and a pre–addressed postage– paid envelope for us to return your copy to you.

**Local Rules 30–250, 33–250, 34–250 and 36–250** Discovery requests or responses should not be submitted to the court unless they are relevant and necessary to support or oppose a motion at issue before the court.

**Local Rule 5–135** Once the defendant(s) have served a responsive pleading, you are

under an ongoing duty to serve them with copies of all documents you submitted to the court. A proof of service shall be attached to the original of any document lodged or filed with the court, showing the date, manner and place of service. A sample proof of service is attached.

**Local Rule 7–130** Documents submitted to the court must be legible, firmly bound at the top left corner, pre–punched with two (2) holes centered 2–¾'' apart, ½ '' from the top edge of the page and writing shall be on one (1) side of the page <u>only</u>.

**Local Rule 7–132** Every document submitted to the court must include your name, address and prisoner identification number in the upper left hand corner of the first page.

**Local Rules 83–182** Each party appearing in propria persona is under a continuing duty to notify the Clerk and all other parties of any change of address by filing separate notice; absent such notice, service at prior address shall be fully effective.

<u>Other Provisions:</u>
A complete copy of the Local Rules should be available in the prison library.   We do not provide individual copies to litigants.

<u>Request for Case Status</u> The court will notify you as soon as any action is taken in your case.  Due to the large number of civil actions pending before the court, THE CLERK IS UNABLE TO RESPOND IN WRITING TO INDIVIDUAL INQUIRES REGARDING THE STATUS OF YOUR CASE. As long as you keep the court apprised of your current address, you will receive <u>all</u> court decisions which might affect the status of your case.

<u>Copy Work</u> The Clerk's Office does not provide copies of documents to parties. Copies of documents may be obtained from the Attorney's Diversified Service (ADS) by writing to them at: 741 N. Fulton Street, Fresno CA 93728, or by phoning 800–842–2695. The court will provide copies of docket sheets at $0.50 per page.   Note: In Forma Pauperis status does not include the cost of copies.

<u>Proposed Orders</u> Parties are not required to submit a proposed order when filing a motion. If a proposed order is submitted, the court may disregard the order and prepare its own order.

Jack L. Wagner, Clerk

United States District Court

by:   M. Krueger

Deputy Clerk

**The following is a sample Proof of Service.   Pursuant to Rule 5 of the F.R.Cv.P. and Local Rule 5–135, each document filed after the court orders service in your case shall be served on opposing counsel and a proof of service attached to your document filed with the court.**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

_____
.

v.                                                    **Case Number:**

_____

**PROOF OF SERVICE**

_____  /

.

    **I hereby certify that on** _____**, I served a copy**

**of the attached** _____,

**by placing a copy in a postage paid envelope addressed to the person(s) hereinafter**

**listed, by depositing said envelope in the United States Mail at**

_____:

**(List Name and Address of Each
Defendant or Attorney Served)**

**I declare under penalty of perjury that the foregoing is true and correct.**

_____
**(Signature of Person Completing Service)**

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

**CARLOS CHICO,**
Plaintiff(s)/Petitioner(s),

vs.

CASE NO. **2:05–CV–00146–MCE–PAN**

**ROSANNE CAMPBELL,**
Defendant(s)/Respondents(s).

---

**IMPORTANT**
      **CHECK AND SIGN ONLY ONE SECTION OF THIS FORM, THEN RETURN
IT TO THE CLERK'S OFFICE NOT LATER THAN 20 DAYS FOLLOWING YOUR
FIRST APPEARANCE, ANSWER OR RESPONSIVE PLEADING.**

---

### CONSENT TO JURISDICTION OF
### UNITED STATES MAGISTRATE JUDGE

    In accordance with the provisions of Title 28, U.S.C Sec. 636(c)(1), the undersigned
hereby voluntarily consents to have a United States Magistrate Judge conduct all further
proceedings in this case, including trial and entry of final judgment, with direct review by the
Ninth Circuit Court of Appeals, in the event an appeal is filed.

Date: _1/31/c5_      Signature: _Benjamin Ramos_

Print Name: _Benjamin Ramos_
    ( ) Plaintiff/Petitioner ( ) Defendant/Respondent
(✗) Counsel for * _Petitioner, Carlos Chico_

---

### DECLINE OF JURISDICTION OF
### UNITED STATES MAGISTRATE JUDGE

    Pursuant to Title 28, U.S.C. Sec 636(c)(2), the undersigned acknowledges the
availability of a United States Magistrate Judge but elects to have this case randomly assigned
to a United States District Judge.

Date: _____      Signature: _____

Print Name: _____
    ( ) Plaintiff/Petitioner ( ) Defendant/Respondent
( ) Counsel for * _____

---

*\*If representing more than one party, counsel must indicate name of each party responding.*

1

2

3

4

5

6

7

8                      United States District Court

9                    Eastern District of California

10

11

12  Carlos Chico,

13          Petitioner,              No. Civ. S 05-0146 MCE PAN P

14      vs.                          Order

15  Rosanne Campbell, Warden,

16          Respondent.

17                              -oOo-

18      Petitioner, a state prisoner without counsel, has filed a

19  petition for a writ of habeas corpus. <u>See</u> 28 U.S.C. § 2254.

20  Petitioner has paid the filing fee.  <u>See</u> 28 U.S.C. § 1914(a).

21      Upon review of an application for a writ of habeas corpus, a

22  judge must either grant the writ or issue an order directing the

23  respondent to show cause why it should not be granted unless it

24  appears from the application that the applicant or person

25  detained is not entitled to relief.  28 U.S.C. § 2243.

26  Petitioner may be entitled to relief if he proves his

1  allegations.

2       It is therefore ordered that:

3       1.  Respondent shall file and serve an answer or motion in

4  response to the application within 60 days from the date of this

5  order. See Rule 4, Fed. R. Governing § 2254 Cases.  An answer

6  shall be accompanied by any and all transcripts or other

7  documents relevant to the determination of the issues presented

8  in the application. See Rule 5, Fed. R. Governing § 2254 Cases.

9       2.  If the response is an answer, petitioner's reply, if

10  any, shall be filed and served within 30 days of service of an

11  answer.

12       3.  If the response is a motion, petitioner's opposition or

13  statement of non-opposition shall be filed and served within 30

14  days of service of the motion.  Respondent shall have 15 days to

15  file and serve a reply to any opposition.

16       4.  The Clerk of the Court shall serve a copy of this order

17  together with a copy of petitioner's application for a writ of

18  habeas corpus on Jo Graves, Senior Assistant Attorney General.

19       Dated:  January 28, 2005.

20

21

22                          _____

23                              Peter A. Nowinski
                                Magistrate Judge

24

25

26

1   BILL LOCKYER
    Attorney General of the State of California
2   ROBERT R. ANDERSON
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   MORRIS BEATUS
    Deputy Attorney General
5   PEGGY S. RUFFRA
    Supervising Deputy Attorney General
6   State Bar No. 117315
      455 Golden Gate Avenue, Suite 11000
7     San Francisco, CA 94102-7004
      Telephone: (415) 703-1362
8     Fax: (415) 703-1234
    Attorneys for Respondent
9
                    IN THE UNITED STATES DISTRICT COURT
10
                  FOR THE EASTERN DISTRICT OF CALIFORNIA
11

12  **CARLOS CHICO,**                         CIV S 05-0146 MCE PAN P

13                            Petitioner,      **MOTION TO TRANSFER VENUE**
                                               **TO DISTRICT OF CONVICTION**
14          **v.**

15  **ROSEANNE CAMPBELL, Warden,**

16                            Respondent.

17

18          Pursuant to Gen. L.R. 3-120(d), respondent hereby asks this Court to transfer this habeas

19  corpus action to the Northern District of California.

20          According to the petition, petitioner was convicted of several counts of armed robbery in

21  San Mateo Superior Court.  The Eastern District is the wrong venue for a habeas corpus challenge

22  to a judgment of conviction arising from that county.  *See* Gen. L.R. 3-120(b) (listing counties of

23  conviction for which Eastern District venue is proper).

24          Accordingly, we ask this Court to vacate the Order to Show Cause and transfer the case

25  to the Northern District of California for assignment.

26

27

28

                                              1

Dated:  February 23, 2005

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

ROBERT R. ANDERSON
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

MORRIS BEATUS
Deputy Attorney General


/s/
PEGGY S. RUFFRA
Supervising Deputy Attorney General

Attorneys for Respondent

PSR/cfl

1

2

3

4

5

6

7

8                         United States District Court

9                       Eastern District of California

10

11

12  Carlos Chico,

13         Petitioner,          No. Civ. S 05-0146 MCE PAN P

14      vs.                     Order

15  Roseanne Campbell, Warden,

16         Respondent.

17                              -oOo-

18      Petitioner, having been convicted in the San Mateo County

19  Superior Court, seeks a writ of habeas corpus. <u>See</u> 28 U.S.C.

20  § 2254.  Respondent moves to transfer this action to the United

21  States District Court for the Northern District of California.

22      Although this court and the United States District Court in

23  the district where petitioner was convicted both have jurisdiction,

24  <u>see</u> <u>Braden v. 30th Judicial Circuit Court</u>, 410 U.S. 484 (1973),

25  witnesses and evidence necessary for the resolution of petitioner's

26  application are more readily available in the county of conviction,

1    Id. at 499 n. 15; 28 U.S.C. § 2241(d).

2        I therefore transfer this action to the United States District

3    Court for the Northern District of California.

4        So ordered.

5        Dated: March 8, 2005.

6

7                                        /s/ Peter A. Nowinski
                                        Peter A. Nowinski
8                                        Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26