1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  NANETTE WINAKER, State Bar No. 186025
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5934
     Fax:  (415) 703-1234
8    Email:  Nanette.Winaker@doj.ca.gov

9  Attorneys for Respondent

10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHRN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15  **CARLOS CHICO,**                          C 05-01282 MJJ

16                              Petitioner,    **MOTION TO DISMISS**
                                               **HABEAS CORPUS PETITION**
17        v.                                   **FOR FAILURE TO EXHAUST**
                                               **STATE REMEDIES OR**
18  **ROSEANNE CAMPBELL, Warden,**             **FAILURE TO STATE A**
                                               **FEDERAL CLAIM**
19                              Respondent.
                                               Hearing Date:  December 4, 2007;
20                                                             9:00 a.m.

21

22          Respondent hereby moves to dismiss the petition for writ of habeas corpus on the grounds

23  that the claim petitioner raised in his habeas corpus petition before this Court has never been

24  exhausted before the California Supreme Court.

25          A motion to dismiss in lieu of an answer on the merits is proper where the petition is

26  procedurally defective. *See White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989); *O'Bremski v. Maass*,

27  915 F.2d 418, 420 (9th Cir. 1990); Rules Governing 28 U.S.C. § 2254 Cases, Rule 4, and Advisory

28  Committee Notes.

Motion To Dismiss - *Chico v. Campbell* - C 05-01282 MJJ

STATEMENT OF THE CASE

In July 1998, petitioner pled guilty to five counts of second-degree robbery, including five attendant enhancements for the use of a firearm. Exhibit ("Exh.") A at 1. Petitioner was sentenced to 20 years, eight months in prison. *Id.* at 2.[1/]

Petitioner's conviction was affirmed in a published opinion by the California Court of Appeal on December 21, 2001. Exh. A. Petitioner filed a petition for review in the California Supreme Court, which was granted on March 27, 2002, but deferred, "pending consideration and disposition of a related issue in *People v. Buttram*, S103761[.]" Exhs. B & C.[2/] On October 29, 2003, the California Supreme Court dismissed petitioner's petition for review. Exh. D.

Petitioner filed the instant petition in the United States District Court, Eastern District, on January 24, 2005; on March 29, 2005, the case was transferred to this Court. Exh. E.

ARGUMENT

I.

### THE PETITION SHOULD BE DISMISSED FOR FAILURE TO EXHAUST THE CLAIM RAISED

Petitioner's sole claim in the instant habeas petition is that the trial court's imposition of sentence on three arming enhancements under Penal Code section 12022.53 was unauthorized. Pet. at 5. While this claim was raised in petitioner's petition for review filed in the California Supreme Court, the grounds to support petitioner's claim did not refer to a specific federal constitutional right, constitutional provision, federal constitutional case, or even a state case invoking a federal constitutional issue. Exh. B. Rather, his claim was that the sentence imposed in connection with the arming enhancements was unauthorized based on the language and legislative history of the relevant state statute. Exh. B at 11-17.

---

1. Petitioner was initially sentenced to 21 years, 8 months; pursuant to a ruling by the California Court of Appeal on petitioner's petition for writ of habeas corpus, the trial court modified petitioner's sentence, reducing it to 20 years, 8 months. *See* Exh. A at 2.

2. The court eventually held in *Buttram* that "absent contrary provisions in the plea agreement itself, a certificate of probable cause is not required to challenge the exercise of individualized sentencing discretion within an agreed maximum sentence." *People v. Buttram*, 30 Cal.4th 773, 790 (2003).

Motion To Dismiss - *Chico v. Campbell* - C 05-01282 MJJ

2

1    "[S]tate prisoners must give the state courts one full opportunity to resolve any

2    constitutional issues by invoking one complete round of the State's established appellate review

3    process," including discretionary review to the supreme court is that is the state's practice.

4    *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir.

5    1996) (petitioner must have "'fairly presented' his federal claim to the highest state court with

6    jurisdiction to consider it"; *McCall v. Benson*, 114 F.3d 754 (8th Cir. 1997) ("to fairly present a

7    federal claim to the state courts, the petitioner must have referred to "'a specific federal

8    constitutional right, a particular constitutional provision, a federal constitutional case, or a state case

9    raising a pertinent federal constitutional issue" in a claim before the state courts.' [Citations.]").

10    Thus, where a state defendant fails to raise a claim in the state supreme court, the claim is not

11    exhausted. *Roman v. Estelle*, 917 F.2d 1505, 1506 (9th Cir. 1990); *James v. Giles*, 221 F.3d 1074,

12    1077, n. 3 (9th Cir. 2000); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999).

13    Accordingly the instant petition must be dismissed as unexhausted. *Coleman v.*

14    *Thompson*, 501 U.S. 722, 731 (1991) ("This Court has long held that a state prisoner's federal habeas

15    petition should be dismissed if the prisoner has not exhausted available state remedies as to *any* of

16    the federal claims"), emphasis added; *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006)

17    ("Once a district court determines that a habeas petition contains only unexhausted claims, it need

18    not inquire further as to the petitioner's intentions. Instead, it may simply dismiss the habeas petition

19    for failure to exhaust."); *Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001) (district court is obligated

20    to dismiss immediately where the petition contains no unexhausted claims).    Alternatively,

21    petitioner's claim should be dismissed given it is not cognizable on federal habeas review.

22                                         **II.**

23    **THE PETITION SHOULD BE DISMISSED FOR FAILURE TO STATE
      A FEDERAL CLAIM**

24

25    In conducting habeas review, a federal court is limited to deciding whether a conviction

26    violates the Constitution, laws or treaties of the United States; federal habeas corpus relief is not

27    available for state law violations. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68

28    (1991); *Dugger v. Adams*, 489 U.S. 401, 409 (1989) ("[T]he availability of a claim under state law

1   does not of itself establish that a claim was available under the United States Constitution.").

2   As in the petition for review filed in the California Supreme Court, petitioner's federal

3   petition alleges that based on the plain language and legislative history of a state statute, the trial

4   court erroneously imposed three separate sentences on three arming enhancements. Pet. at 5 & Exh.

5   1 at 11-17. Because the sole ground for relief being alleged by petitioner does not present a federal

6   constitutional claim or allege a violation of a federal constitutional right, it is not cognizable on

7   federal habeas review. *See Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002) (trial court's alleged

8   failure to list reasons for imposing consecutive terms cannot form basis for federal habeas relief);

9   *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994) (state's interpretation of federal law to enhance

10  sentence through use of prior conviction does not justify federal habeas relief); *Hendricks v. Zenon*,

11  993 F.2d 664, 674 (9th Cir. 1993) (petitioner's "claim regarding merger of convictions for

12  sentencing is exclusively concerned with state law and therefore not cognizable in a federal habeas

13  corpus proceeding").   Thus, even assuming arguendo, the instant petition is exhausted, this Court

14  may not reach the merits of the petition. *See Estelle v. McGuire*, 502 U.S. at 67-68.

15  //

16  //

17  //

18  //

19  //

20

21

22

23

24

25

26

27

28

Motion To Dismiss - *Chico v. Campbell* - C 05-01282 MJJ

4

1

**CONCLUSION**

2      For the reasons stated, respondent requests that the petition be dismissed for failure to

3  exhaust state remedies.

4          Dated:  October 15, 2007

5                              Respectfully submitted,

6                              EDMUND G. BROWN JR.
                              Attorney General of the State of California

7                              DANE R. GILLETTE
                              Chief Assistant Attorney General
8
                              GERALD A. ENGLER
9                              Senior Assistant Attorney General

10                             PEGGY S. RUFFRA
                              Supervising Deputy Attorney General

11

12                             /s/ Nanette Winaker

13
                              NANETTE WINAKER
14                             Deputy Attorney General
                              Attorneys for Respondent
15

16  NW:er
    SF2007401458
17  20107129.wpd

18

19

20

21

22

23

24

25

26

27

28

Motion To Dismiss - *Chico v. Campbell* - C 05-01282 MJJ

# EXHIBIT A

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR



FILED
Court of Appeal - First App. Dist.

DEC 2 1 2001

RON D. BARROW, CLERK
By _____
                          DEPUTY

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARLOS CHICO,<br><br>    Defendant and Appellant. | A092567<br><br>(San Mateo County<br>Super. Ct. No. SC042571A) |
| In re CARLOS CHICO,<br><br>    on Habeas Corpus. | A096594 |

DOCKETED
SAN FRANCISCO

DEC 2 6 2001

By L. CARAMANZANA
No. SF 2000 DA 1315

      Carlos Chico was sentenced to state prison after pleading guilty to five counts of robbery. On appeal, and by associated petition for habeas corpus, he contends that the trial court erred by imposing a consecutive firearms use enhancement under Penal Code section 12022.53, subdivision (f) (§ 12022.53(f)), for each of four counts stemming from defendant's simultaneous robbery of four victims at gunpoint.[1] We hold that section 12022.53(f) contemplates a separate enhancement for each separately punishable underlying offense, and was thus properly applied here. Accordingly, we affirm the judgment.

## BACKGROUND

      According to the facts recited in the probation report, defendant and a companion robbed a drug store in San Carlos on January 16, 1998. In the course of the robbery

---

[1] All further statutory references are to the Penal Code.

F

defendant's companion held a store employee at gunpoint. A week later, defendant and the same companion robbed a market in Woodside. On this occasion defendant pointed a handgun at three clerks and the store's owner, whom he ordered to remove and deliver cash from an open safe. Defendant was charged with five counts of second degree robbery in violation of section 212.5, subdivision (c). The first four counts, one for each victim, stemmed from the Woodside incident. As to each of these, it was alleged that he used a firearm so as to be subject to an enhancement under section 12022.53. As to the fifth count, which grew out of the San Carlos robbery, he was charged with an enhancement under section 12022, subd. (a)(1), based on being armed with a firearm.

Defendant pleaded guilty to all counts. The trial court sentenced him to 21-2/3 years, consisting of a 3-year base term on count one, consecutive 1-year terms on counts 2 and 3, a 10-year firearms enhancement on count 1, and consecutive enhancements of 3-1/3 years on counts 2 and 3, with concurrent terms and enhancements on counts 4 and 5. On defendant's petition for habeas corpus, we issued an order to show cause why the sentence should not be vacated for exceeding an indicated sentence of 20-2/3 years. While that matter was pending before this court, the trial court modified the sentence by reducing the base term on count 1 to 2 years, thereby reducing the total sentence to 20-2/3 years. This appeal followed.

## DISCUSSION

### I.
### CERTIFICATE OF PROBABLE CAUSE

Defendant's sole contention is that the sentence reflects a misapplication of section 12022.53(f) insofar as it imposes consecutive enhancements based upon the multiple victims in the Woodside robbery. Respondent replies that (1) this point is not available on appeal because it amounts to a challenge to the plea bargain and defendant did not obtain a certificate of probable cause as required by section 1237.5; and (2) on the merits, the sentence reflects a proper application of the statute.

We reject respondent's argument that this appeal challenges the validity of the

plea and thus requires a certificate of probable cause. In the cases cited by respondent, a defendant attempted to challenge a specific negotiated sentence. (*People v. Panizzon* (1996) 13 Cal.4th 68 [life imprisonment plus 12 years]; *People v. McNight* (1985) 171 Cal.App.3d 620 [prison term of 21 years].) Respondent would have us extend these authorities to any sentence falling under a negotiated *ceiling*. On its face, such an agreement contemplates that the trial court will arrive at a sentence by a lawful exercise of discretion, as in nonnegotiated cases, but subject to the constraints of the bargain. We do not believe a challenge to the sentencing calculus in such a case constitutes, in substance or form, a challenge to the validity of the plea. It therefore does not require a certificate of probable cause.

## II.
## MULTIPLE ENHANCEMENTS

On the merits, we hold that section 12022.53(f) contemplates multiple enhancements where a defendant uses a firearm in a robbery, or similar crime of violence, against multiple victims.

Section 12022.53, subdivisions (b) through (d), provide additional terms of imprisonment of 10 years, 20 years, and 25 years to life, respectively, for anyone who, in the commission of specified felonies, uses a firearm, discharges a firearm, or discharges a firearm causing great bodily injury. Subdivision (f) provides, "Only one additional term of imprisonment under this section shall be imposed per person *for each crime*. If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment. An enhancement involving a firearm specified in Section 12021.5, 12022, 12022.3, 12022.4, 12022.5, or 12022.55 shall not be imposed on a person in addition to an enhancement imposed pursuant to this section . . . ." (Italics added.)

Defendant contends that the phrase "for each crime" is ambiguous where a defendant engages in a single instance of criminal conduct against multiple victims. He concedes that "[a]s lawyers use the term 'crime,' there may have been four crimes."

However, he contends, "*laymen* do not use the term to refer to the multiple violations that almost every criminal episode can be divided into." (Italics added.) Instead, the argument goes, laypersons think of a "crime" as comprising the *conduct* punishable by criminal law. Thus, in accordance with the rule of lenity, which resolves ambiguities in favor of the accused, section 12022.53 must be construed to permit only one enhancement for each instance of *conduct* for which the defendant is being punished.

We reject the premise that the term "crime" is rendered ambiguous by the lay meaning that defendant attributes to it. "It is true that courts ordinarily give the words of a statute the usual, everyday meaning they have in lay speech. [Citation.] But that rule has an important exception . . .: when a word used in a statute has a well-established legal meaning, it will be given that meaning in construing the statute. This has long been the law of California . . . . [¶] . . . . The rule applies most obviously when the meaning of the word in question is wholly or primarily legal. [Citations.] But the rule is also applicable when the word has both a specific legal meaning and a more general sense in informal legal usage or in lay speech. [Citations.] In that event the lawmakers are presumed to have used the word in its specifically legal sense." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19-20, italics omitted; see § 7, subd. (16) ["Words and phrases must be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning."].)

The term "crime" has a "well-established legal meaning": a breach of duty punishable by the criminal law. (See Black's Law Dict. (7th ed. 1999) p. 377 [defining "crime" as "[a] social harm that the law makes punishable; the breach of a legal duty treated as the subject-matter of a criminal proceeding."].) Where a single act breaches more than one duty and each such breach is separately and additionally punishable—as where a single act of violence is directed against multiple victims—multiple crimes have been committed.

This meaning is not contrary to the lay definition, but refines and qualifies it. In

4

lay usage, there is rarely an occasion to distinguish between conduct violating the criminal law, and the violation of law in and of itself. So complete is the lay conflation of these concepts that one popular dictionary gives both meanings not as alternatives but as variants of a single definition. (Webster's Ninth New Collegiate Dict. (1984) p. 307 [defining "crime" as "an act or the commission of an act that is forbidden or the omission of a duty that is commanded by a public law and that makes the offender liable to punishment by that law; *esp.*: a gross violation of law"].)

In any event, in legal usage the word "crime," when used advisedly, refers not to a particular instance of conduct, but to a particular violation of a criminal statute. Consistent with this conception, courts have spoken of situations in which "an act violates more than one statute and thus constitutes more than one crime." (*People v. Akins* (1997) 56 Cal.App.4th 331, 338; see 1 Witkin, Cal. Criminal Law (3d ed. 2000) Elements, § 24, p. 230, italics added ["Even though separate *crimes* are charged and proved, P.C. 654 provides that there can be only one punishment . . . for a *single act* or omission"].) Similarly, in *People v. Deloza* (1998) 18 Cal.4th 585, the court referred to the robbery of multiple victims as "robberies" and "crimes," even while holding that "they were clearly committed on the 'same occasion.' " (*Id.* at pp. 595-596.) In *People v. Lawrence* (2000) 24 Cal.4th 219, 223, the court analyzed *Deloza* in depth, again referring to "the defendant's *crimes*" in that case. (Italics added; see *id.* at p. 227.) Many other courts have described convictions of multiple-victim offenses, including robbery, as involving multiple "crimes." (E.g., *People v. Bonner* (2000) 80 Cal.App.4th 759, 765, italics added [defendant guilty of two attempted robberies where he planned to steal hotel receipts from manager and assistant manager; "at the moment appellant entered the garage, he intended to rob both the manager and assistant manager. Any later event that interrupted those *crimes* was irrelevant to appellant's liability . . . ."]; *id.* at p. 764 ["had he actually confronted the two in the garage but been interrupted before completing the *crimes*, he could properly be convicted of two counts of attempted robbery"]; *In re Asean D.* (1993) 14 Cal.App.4th 467, 474-475 ["robberies" committed by stealing car from two occupants were separately punishable under principle that section 654 does not

bar "separate punishments for separate *crimes* of violence committed against separate victims" (italics added)]; *People v. Ramos* (1982) 30 Cal.3d 553, 587 [under multiple victim exception to section 654, defendant "may be convicted and punished for *each crime* of violence committed against a different victim" in single course of conduct], revd. on other grounds, *California v. Ramos* (1983) 463 U.S. 992; *People v. Lagomarsino* (1950) 97 Cal.App.2d 92, 98, italics added ["California . . . has definitely aligned itself with those states that hold that, so far as crimes against the person are concerned (murder, assault, robbery, etc.), although there may be but one act or intent, there are *as many crimes as there are persons* affected."]; *id.* at p. 99 ["a *separate crime* exists as to each person harmed by the act of defendant"]; *People v. Plumlee* (1960) 177 Cal.App.2d 224, 227 [quoting *Lagomarsino*]; *People v. Galvin* (1957) 148 Cal.App.2d 285, 293 [citing *Lagomarsino* in rejecting claim that two multiple-victim robberies "constitute[d] but one, or, at most, two crimes"; "In crimes against the person, there are as many offenses as persons affected."])

In the absence of some sound reason to the contrary, we must conclude that when the Legislature enacted section 12022.53(f), it had in mind the accepted legal meaning of "crime" as a distinct, separately and additionally punishable violation of the criminal law.

In an attempt to dissuade us from this conclusion, defendant asserts that section 12022.53(f) originated as a proposed initiative measure, which the Legislature "mirrored" in the statute.[2] He asserts that the legislative history contains "no indication that the

---

[2] In some of the committee reports for the bill that became section 12022.53, Mike Reynolds, whom defendant describes as the author of the failed "10-20-Life Initiative," is listed as the "source" of the bill. (See Sen. Rules Com., Off. of Floor Analyses, Rep. on Assem. Bill No. 4, as amended Sept. 10, 1997; Sen. Com. on Public Safety, Rep. for Assem. Bill No. 4, for hearing date July 8, 1997.) Another report notes that the bill was "virtually identical" to Assembly Bill No. 892 in the previous session, which was "also similar to a proposed 1995 initiative by three strikes supporters that failed to collect sufficient signatures." (Assem. Com. on Appropriations, Rep. on Assem. Bill. No. 4, for hearing date May 14, 1997, p. 2.)

The aforementioned Assembly Bill No. 892 was described during its course through the Legislature as "mirror[ing] a measure presently attempting to qualify as a state ballot

Legislature attributed any meaning to 'each crime' " other than that intended by the drafter of the initiative measure. He further asserts that the drafter intended the term "crime" to mean a single criminal transaction, such that a robbery simultaneously perpetrated against multiple victims will support only one enhancement under section 12022.53. In the companion petition for habeas corpus, defendant offers support for this reading in the form of private correspondence with the drafter and another proponent of the statute. He prays for an evidentiary hearing "in particular to permit [defendant] an opportunity to examine [the drafters] . . . as to the meaning of the 'each crime' language . . . ."

We reject the proposition that when the Legislature enacts a proposed but unadopted initiative into law, the effect of the resulting statute may be determined by consulting the drafters or supporters of the initiative, or is otherwise affected by the meanings they might have attached to the words used. Even the personal understanding of an individual *legislator*, including a bill's author, is relevant only insofar as it might be inferred to have been acted upon by the Legislature as a body. (See *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589 ["In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it . . . . Nor do we carve an exception to this principle simply because the legislator whose motives are proffered actually authored the bill in controversy."] ; cf. *id.* at p. 590, italics in original [author's letter, published by unanimous resolution in legislative journal, as to intent of bill enacted in previous session, was worthy of consideration because it gave "evidence of *more* than the personal understanding of the letter's author" in that it stated not only his own intent "but that he *argued* to that effect in obtaining the bill's passage"], citing *Rich v. State Board of Optometry* (1965) 235 Cal.App.2d 591, 603 [assemblyman's

---

initiative." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 892, for hearing January 9, 1996, p. 5.) Later in that session it was reported that the initiative measure had failed to qualify for the ballot. (Sen. Com. on Crim. Procedure, Rep. on Assem. Bill No. 892, for hearing July 2, 1996, pp. 6-7.)

testimony properly considered where it "was not an expression of his own opinion . . . but a reiteration of the discussion and events which transpired in the Assembly committee hearing when the amendments . . . were under consideration."].)

Nowhere in defendant's argument do we see any basis to suppose that the understanding assertedly held by the initiative's author was communicated to or acted upon by the Legislature as a body. Defendant's showing is therefore inadequate to support a departure from the well-established legal meanings of the terms chosen.

Nor does it appear that an inquiry into legislative history would otherwise assist defendant. Defendant has not directed us to any affirmative indication of the Legislature's actual intent, and such relevant discussion as we have found tends to establish that the purpose of subdivision (f) was to address not the situation before us but the natural effect of the *mutual inclusiveness* of the three enhancements set forth in section 12022.53. The statute imposes progressively more severe penalties for use of a firearm, discharge of a firearm, and injurious discharge of a firearm. Of logical necessity, any person who engages in the more serious forms of conduct thereby engages in the lesser as well. Thus one who discharges a firearm necessarily *uses* a firearm, and one who *injuriously* discharges a firearm necessarily commits the lesser acts of discharging and using a firearm. Without legislative guidance it would be possible to argue that one who commits the more serious of these acts is thereby subjected not only to the aggravated penalty but also to the lesser penalties for the lesser, necessarily included conduct. The purpose of subdivision (f), insofar as it is pertinent here, is to preclude such an argument by clarifying that if a more severe enhancement applies, that enhancement alone may (and must) be imposed.

This intention is reflected in the only legislative explication we find in the legislative history. It appears not in the history of the bill that actually became section 12022.53(f), but in a committee report concerning Assembly Bill No. 892, the failed bill from the previous session, which was later described as "virtually identical" to the bill that was eventually adopted. (Assembly Com. on Appropriations, Rep. on Assem. Bill No. 4, for hearing date May 14, 1997, p. 2.) Like the current statute, the earlier bill

8

contained a subdivision (f), which allowed only one enhancement "for each crime." (Assem. Bill No. 892 (1995-1996 Session) as amended Jan. 9, 1996.) Multiple legislative reports described the effect of this limitation as follows (italics added): "Only one of *the enhancements described above* shall be imposed for each crime. If more than one applies, only the greatest one found true shall be imposed by the court." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 892, for hearing January 9, 1996, p. 4; Assem. Third Reading, Assem. Bill No. 892, as amended Jan. 23, 1996, p. 2.) The italicized language is, of course, a reference to the three escalating, and overlapping, enhancements.

In short, such of the legislative history as we have reviewed establishes only that the purpose of the subdivision is to ensure that a defendant who engages in one of the more aggravated forms of firearms use will receive the aggravated punishment, but will not be *additionally* punished by virtue of the necessary inclusion of the lesser forms of misconduct.

We derive further support for our rejection of defendant's arguments from *People v. Perez* (2001) 86 Cal.App.4th 675, 682. The defendant there shot his wife's sister and brother-in-law, the latter fatally, in a domestic dispute. He was convicted of murder and attempted murder, and received two 25-to-life enhancements under section 12022.53. On appeal he contended that section 12022.53(f) authorized only one enhancement "per person" and that this could "only be read to mean that if multiple enhancements are found true under section 12022.53, only a single enhancement can be imposed." (*Id.* at p. 681.) In rejecting this contention, the court declared that "the plain language of the first sentence . . . makes clear that the subdivision (f) limitation applies 'for each crime,' not each criminal." (*Ibid.*) "Under the plain meaning rule of statutory construction, defendant's contention must be rejected. The first sentence of [section 12022.53,] subdivision (f) presents no ambiguity as to the Legislature's intent to apply a limitation to one enhancement per crime." (*Id.* at p. 681.) The court then observed that even if subdivision (f) were ambiguous, the ambiguity had been resolved by a legislative declaration of intent accompanying a subsequent corrective amendment. (*Id.* at p. 682,

quoting Stats. 1998, ch. 936, § 28.)  While this declaration is not directly applicable to the ambiguity asserted by defendant, its adoption without addressing or even acknowledging any such ambiguity further distances the statute from any interpretation based upon supposed "lay" meanings.  Moreover, the court went on to reason that the defendant's interpretation there—like defendant's here—would conflict with the overall legislative purpose of the statute:  "[U]nder defendant's proposed construction, a criminal using a firearm could go on a shooting spree, injure or kill numerous victims, and receive only one enhancement for the gun use, as though he had injured just one victim.  In light of the legislative intent to promote public safety and discourage the use of guns, such a construction would frustrate rather than promote the Legislature's declared intent in enacting and amending the statute.  Therefore, it is rejected." (*Ibid.*)

The judgment is affirmed.

_____
Sepulveda, J.


We concur:


_____
Reardon, Acting P.J.


_____
Kay, J.


*People v. Chico* (A092567)

Trial Court:                     San Mateo County Superior Court

Trial Judge:                    Honorable Gregory Jensen

Counsel for Appellant:          William Richard Such
                                First District Appellate Project

Counsel for Respondent          Nanette Winaker
                                Office of Attorney General

RECEIVED
ATTORNEY GENERAL
2001 DEC 26  AM 9:54
CA DEPT OF JUSTICE
SAN FRANCISCO
DOCKET UNIT

# EXHIBIT B



## IN THE SUPREME OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA     No. _____

              Plaintiff and Respondent     (Court of Appeal
                                         No. A092567)

             -vs-                              (San Mateo County
                                          Superior Court

CARLOS CHICO                            No. SC042571A)

                   Defendant and Appellant
_____/

In re

      CARLOS CHICO                          (Court of Appeal
                                       No. A096594)

                      Petitioner
    on Habeas Corpus
_____/

## PETITION FOR REVIEW

**MATTHEW ZWERLING**
**Executive Director**

RICHARD SUCH, sbn 46022
   Staff Attorney
FIRST DISTRICT APPELLATE PROJECT
730 Harrison St. # 201
San Francisco, CA 94107
(415) 495-3119

Attorneys for Appellant/Petitioner
CARLOS CHICO

DOCKET
ADM-SF _____
CIV-SF _____
CR-SF SF2091 SH0132
Entered by _____
Date 1/3/02

# TABLE OF CONTENTS

TABLE OF CASES ............................................................................... ii

PETITION FOR REVIEW .................................................................. 1

BRIEF IN SUPPORT OF PETITION .................................................. 7

    STATEMENT OF THE CASE ......................................................... 7

    STATEMENT OF THE FACTS ....................................................... 10

    STATEMENT OF THE LAW ........................................................... 11

    **I.    THE IMPOSITION OF THREE
           ENHANCEMENTS UNDER PENAL CODE
           SECTION 12022.53 WAS UNAUTHORIZED.** ........................ 11

    CONCLUSION ................................................................................. 18

## **TABLE OF CASES**

Keeler v. Superior Court (1979) 2 Cal.3d 619 ............................................. 4, 14, 15

People v. Gilbert (1969) 1 Cal.3d 475 .................................................................. 17

People v. Mason (Jan. 15, 2002) __ Cal.App.4th __,
      02 C.D.O.S. 435 (No. D035933 .................................................................. 4

People v. Perez (2001) 86 Cal.App.4th 675 ................................................. 3, 15-17

Ratzlaf v. United States (1994) 510 U.S. 132 ....................................................... 14

United States v. Bass (1971) 404 U.S. 336 ....................................................... 5, 14

IN THE SUPREME OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA          No. _____

                      Plaintiff and Respondent          (Court of Appeal
                                       No. A092567)
              -vs-          (San Mateo County
                                       Superior Court
CARLOS CHICO          No. SC042571A)

              Defendant and Appellant
_____/

In re

        CARLOS CHICO          (Court of Appeal
                             No. A096594)

                  Petitioner
    on Habeas Corpus
_____/

## PETITION FOR REVIEW BY THE SUPREME COURT

TO THE HONORABLE RONALD GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE CALIFORNIA SUPREME COURT:

Appellant/petitioner  CARLOS CHICO hereby petitions for review by this Court of the Opinion and Decision of the Court of Appeal for the First Appellate District, Division Four, filed and certified for publication on December 21, 2001, affirming the judgment in a criminal case (a copy of which is attached hereto as

1

Appendix A), which was modified by an Order filed January 2, 2002 (Appendix
B), and the Order of that court, also filed on December 21, 2001, denying a
Petition for a Writ of Habeas Corpus (Appendix C), on the ground that review by
this Court is necessary to settle important questions of law, to wit:

    1. Is the language of Penal Code section 12022.53 (the "10/20/Life"
gun-use enhancement statute), limiting the imposition of a 10-, 20-, or 25-
to-life enhancement to "only one additional term ... *for each crime*",
ambiguous as to whether "each crime" refers to each violation of a statute,
each criminal act, or each criminal transaction?

    2. Under the Rule of Lenity, is the defendant entitled to the more
favorable interpretation that the only one additional term may be imposed
for each criminal transaction?

    3. Where the Legislature adopts a failed initiative measure, and
there is no indication in the entire body of legislative history materials that
the Legislature had any intent except to adopt the initiative measure, should
the courts consider the meaning of a term of the measure which was
intended by its author?

    4. In this case, should the court consider that Mike Reynolds, the
author of the failed "10/20/Life" initiative measure which the Legislature
enacted as Penal Code section 12022.53, meant by the term "each crime" to

2

refer to "each criminal transaction"?

Penal Code section 12022.53 provides for enhancements of 10 or 20 years or 25-years-to-life for, respectively, the use, the discharge, and the infliction of bodily harm by a firearm during the commission of enumerated felonies. In some cases, a defendant may use a gun to commit an act which violates several statutes or constitutes multiple violations of the same statute. For example, a defendant may, in one criminal transaction, attempt to rob a busdriver, and commit not only robbery but also kidnaping, kidnaping for robbery, and carjacking, in violation of sections 207, 209, 211, and 215. For another example, if there were passengers on the bus, he might commit as many such violations as there were persons on the bus. The statute could be interpreted to provide for an enhancement for each one of those violations, which would add up to a sentence of enormous length, way out of proportion to the defendant's culpability.

In this case, the defendant and an accomplice robbed a market by pointing a gun at the owner and three employees. The result was that the defendant was convicted of four robberies, and, under the broad interpretation referred to above, was liable for four 10-year enhancements. In another case, a defendant shot two persons and received two 25-to-life enhancements. (People v. Perez (2001) 86 Cal.App.4th 675.) In yet another case, a defendant shot one person and attempted to rob (but did not shoot at) six other persons and received *seven* 25-to-life

3

enhancements.  (People v. Mason (Jan. 15, 2002) __ Cal.App.4th __, 02 C.D.O.S. 435 (No. D035933).

This sort of problem was anticipated by the author of the measure which became section 12022.53, and subdivision (f) of that section was intended to limit the number of enhancements which could be added by providing that "only one additional term of imprisonment under this section shall be imposed per person *for each crime.*"  But "each crime" is ambiguous.  It may mean each violation of statute (as it was held to mean in this and the above cases), or it may mean each criminal act or each criminal transaction.  Under the Rule of Lenity (see, e.g., Keeler v. Superior Court (1979) 2 Cal.3d 619, 631) the defendant is entitled to the benefit of every reasonable doubt as to the meaning of the words of a statute and to the most favorable interpretation.

Mike Reynolds, the sponsor of the Three Strikes Law, also sponsored an initiative measure, which he called the "10/20/Life" measure, which failed to qualify for the ballot.  It was then taken up by the Legislature and enacted, almost word for word, as section 12022.53.  The "each crime" language at issue here was part of the failed initiative measure which was carried over into section 12022.53. On habeas corpus in the Court of Appeal, appellant/petitioner/ petitioner showed (1) that by "each crime" Mike Reynolds meant "each criminal transaction" and that, specifically, he meant that where a person commits one criminal act against

4

several victims (e.g., an attempted robbery of all the patrons of a bar), there should be only one enhancement and (2) that the entire body of legislative history materials fails to show that the Legislature had any intent other than to adopt Mr. Reynolds' measure and, therefore, the meaning which he ascribed to "each crime."

The Court of Appeal held that there is no ambiguity in the term "each crime." The authority cited for that holding, however, consisting of quotations lifted out of cases which have distinguished the term "crime" from "criminal transaction" (Appendix A at pp. 5-6), actually proves the opposite: that there is a need for such distinction because "crime" can be used to refer to a "criminal transaction," even though, in strict usage, it refers only to a particular violation of a criminal statute.[1]

The Court of Appeal further held that it is not appropriate to consider the views of the author of the failed initiative measure which became the statute (Appendix A at pp. 6-9) but failed to address appellant/petitioner's argument that, if nothing else, the fact that the author ascribed a meaning to "each crime" *other*

---

[1] The Court of Appeal said that it is irrelevant how laymen understand "each crime" to refer to the entire criminal transaction – e.g., *a* bank robbery, not multiple *robberies* of several employees or customers of a bank. (Appendix, p. 4.) But that is a mistaken view of the law. As shown below, the rule of lenity is premised on the concept that "'fair warning should be given to the world in language *that the common world will understand*, of what the law intends to do if a certain line is passed.'" (United States v. Bass (1971) 404 U.S. 336, 347-350 [emphasis added].)

than "a particular violation of a criminal statute show that *the term is ambiguous* – i.e., normal English speakers mean different things by it.

Because the term is ambiguous, and because there is no expression of Legislative intent or policy which compels that the term be given the *least favorable* interpretation of it, the defendant, under the Rule of Lenity, is entitled to the *most favorable* interpretation.

WHEREFORE, appellant/petitioner prays that review be granted and that the judgment and sentence be reversed and enhancement for more that one use of a firearm under section 12022.53 be stricken from the judgment.

Dated: January 29, 2002                    Respectfully submitted,

RICHARD SUCH
   Staff Attorney
FIRST DIST. APPELLATE PROJECT
   Attorneys for Petitioner
CARLOS CHICO

## BRIEF IN SUPPORT OF PETITION

## STATEMENT OF THE CASE

Appellant/petitioner Carlos Chico, born December 24, 1977, was charged by an Information No. SC042571A in the San Mateo County Superior Court with four counts of robbery (Pen. Code, § 212.5, subd. (c)) on January 23, 1998 (Counts 1-4), and one count of robbery on January 16, 1998 (Count 5). In connection with Counts 1-4, he was charged with a gun-use enhancement under the "10-20-life" law (Pen. Code, § 12022.53), and in connection with Count 5, he was charged an enhancement for being armed with a firearm (Pen. Code, § 12022, subd. (a)(1)). (ACT 1)

On July 13, 1998, the matter was sent out to trial, and appellant/petitioner pleaded guilty as charged. (ACT 1) His plea was based on a representation by the court that he would receive a sentence of between 12 years and 20 years/8 months in the court's discretion. (CT 7/13/98, pp. 5, 11) The 12-year minimum was based on the court's and district attorney's belief that, under the "10-20-life" law, there would be a mandatory minimum sentence of 12 years, and the 20-year "maximum" was based on an assessment by another judge during pre-trial negotiations. (Id., p. 5.) The district attorney later referred to the 20 years/8 months as an "indicated sentence", but she requested a sentence of 29 years. (RT 9/21/98, p. 6.)

On September 21, 1998, the court sentenced appellant/petitioner as follows:

7

Count 1: middle 3-year term, plus 10-year firearm-use enhancement;

Counts 2 and 3: two **consecutive** 1-year terms (one-third the middle term),

>    plus two 3-year/4-month consecutive terms for the fire-arm use

>    enhancement (one-third of 10 years);*

Count 4: a **concurrent** 1-year term (one-third the middle term),

>    plus a **concurrent** 3-year/4-month consecutive term for the fire-arm use

>    enhancement (one-third of 10 years);*

Count 5: a **concurrent** 1-year term (one-third the middle term).(Id., pp. 10-12.)

The total term was **21 years, 8 months**.  (CT 1-2, 4)

Appellant/petitioner moved to withdraw his plea on the ground that he had been informed when he pleaded guilty that 20 years would not exceed 20 years, 8 months.  The judge denied the motion on the ground that the other judge had "indicated that was probably where the case was going to come out" but that he did not indicate what the sentence was going to be.  (Id., p. 13.)  The judge said that "I don't believe there were any promises held out to Mr. Chico at all in his entering his plea here in what his sentence would be ...."  (P. 14.)

Appellant/petitioner did not appeal but filed a petition for a writ of habeas corpus in the Court of Appeal (No. A088430).  (CT 8)  That court issued an

---

* Of course, since the terms were concurrent, there was no occasion to apply the "one-third the middle base term" rule of Penal Code section 1170.1.

Order to Show Cause.  (CT 12) In response thereto, the Deputy District Attorney, who stood silently by when the court imposed the 21-year/8-month term, wrote to the presiding judge (the original sentencing judge having retired), requesting him to modify the abstract of judgment by reducing the middle 3-year term for Count 1 to a lower, 2-year term.  (CT 8-9) A modified abstract was filed on July 26, 2000, reducing the term for Count 1 as requested.  (CT 13) This was apparently done *ex parte*, without a hearing in open court, and without the presence of appellant/ petitioner or his attorney (the modified abstract shows a "date of hearing" of "09-21-98" and that the judge was the retired judge, and the clerk and reporter his clerk and reporter).  (Compare CT 13 with CT 4, 6, and 10)

## STATEMENT OF THE FACTS

These facts are taken from the probation report.

**Count 5.** On January 16, 1998, appellant/petitioner and co-defendant Bowen Bell, robbed the clerk of a Walgreen's drugstore in San Carlos. One of them pointed a handgun at her and ordered her to unlock the safe. The other robber, apparently appellant/petitioner, who was not armed, reached into the safe and removed $6500 in cash and checks. The robbers fled in a black sports car. Appellant/petitioner's fingerprints were found at the scene. (ACT 5-6)

**Counts 1-4.** A week later, on January 23, 1998, appellant/petitioner and Bell entered the business office of Roberts' grocery store in Woodside, where they encountered the owner and three clerks. Appellant/petitioner brandished a handgun and ordered the clerks to lie on the floor. Mr. Roberts was directed to remove the currency from a safe. The defendants fled with $8500 in 100s and 20s. The victims called 911, and a description of the suspects and a vehicle was broadcast. A police officer pursued the vehicle, which eventually collided with other vehicles at an intersection. The defendants fled on foot but were apprehended. (ACT 6-7)

## STATEMENT OF THE LAW

### I.    THE IMPOSITION OF THREE  ENHANCEMENTS UNDER PENAL CODE SECTION 12022.53 WAS UNAUTHORIZED.

Appellant/petitioner was sentenced on Count 1 to a 2-year term for robbery, plus 10 years for use of a firearm under Penal Code section 12022.53 for that offense.  He was also sentenced to two 1-year terms for robbery in Counts 2 and 3, plus two 3 1/3 year terms for use of a firearm under that section in connection with those offenses.  Only one such enhancement was authorized.

Subdivision (f) of section 12022.53 provides that "only one additional term of imprisonment under this section shall be imposed per person for each crime."

The question is whether the robbery of Roberts' market was one crime or as many crimes as there were victims – i.e., one crime of robbing Roberts' market or four crimes of robbing Mr. Roberts and the three clerks.

Appellant/petitioner showed by the Declaration and Exhibits attached to his petition for writ of habeas corpus in the Court of Appeal, as well as by the legislative-history materials of which, at his request, that court took judicial notice, that the bill which became Penal Code section 12022.53 (AB 4, 1997-98)  was intended to enact Mike Reynold's "10-20-Life" initiative measure, which failed to qualify for the ballot.  As originally submitted to the Legislature, the bill which

became section 12022.53 was almost exactly the same as the initiative measure. The particular provision which is at issue here, subdivision (f), was the same in the measure and in the bill except for the substitution of the word "shall" for the word "must." (Compare Exhibit C with Exhibit D.)

As the bill proceeded through the Legislature not one word was expressed as to the meaning of the "each crime" language of that subdivision in any bill analysis or statement by the bill's author or supporters. (See legislative history materials.) It follows that the Legislature did not mean anything by "each crime" that the author or authors of the initiative measure did not mean. The question is, what did the latter intend by the phrase?

The legislative history material identifies Mike Reynolds as the "sponsor" of AB 4. Mike Reynolds is famous as the sponsor of the "Three Strikes and You're Out" initiative law. Appellant/petitioner's undersigned attorney wrote the letter attached to his habeas corpus petition as Exhibit A to Mr. Reynolds and asked him what he meant by "each crime." Appellant/petitioner showed by his attorney's declaration that Mr. Reynolds called the attorney on the telephone and told him he meant *each criminal transaction*. The attorney gave him an example of someone who used a gun in an attempt to rob twelve persons and asked him if, according to what he meant by the phrase, one 10-year enhancement or multiple enhancement would be appropriate, and he said one such enhancement. Mr.

12

Reynolds told the attorney that he would write him a letter confirming that intent after he checked with Justice James Ardaiz, who he said helped him draft the initiative measure, and Contra Costa County Deputy District Attorney Douglas Pipes.

The attorney did not hear again from Mr. Reynolds. The next day he received an e-mail, Exhibit B, from Mr. Pipes who claimed that the "each crime" language had been added to the bill after it was introduced. Appellant/petitioner's attorney wrote to Mr. Pipes the letter, Exhibit E, showing that Mr. Pipes was mistaken because, as Exhibits C and D show, the "each crime" language was present in the initiative measure and in the bill as first submitted to the Legislature and arguing that Mr. Pipes was mistaken in thinking that the Legislature's intent superceded that of the drafters of the initiative measure, because the legislative history fails to show that anyone in the Legislature had any intent other than to enact Mr. Reynolds's language and, therefore, the meaning that he attached to the language. Mr. Pipes did not dispute that Mr. Reynolds told appellant/petitioner's attorney that, by "each crime," he meant each criminal transaction.

In the entire body of legislative history materials, there is no indication that the Legislature attributed any meaning to "each crime" that Mr. Reynolds did not attribute to it. Indeed, there is no indication that anyone in the Legislature gave any consideration to the meaning of the term.

13

Thus, there is no indication of the Legislature's intent except the language used and whatever can be known or surmised about the significance that Mr. Reynolds attached to the term. The probability is that he meant the same thing that he meant in the "Three Strikes" initiative measure by felony counts which arise "from the same set of operative facts" (in which case consecutive terms are not mandatory). (Pen. Code, § 1170.12, subd. (a)(6).)

In any case, the term is ambiguous. Under the "rule of lenity" appellant/ petitioner is entitled to the most favorable construction, which would be that "each crime" means "each crime arising from the same set of operative facts" – i.e., the "same criminal transaction." (United States v. Bass (1971) 404 U.S. 336, 347-350 [the rule of lenity is premised on the concept that "'fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed'"]; Ratzlaf v. United States (1994) 510 U.S. 132, 148; Keeler v. Superior Court (1970) 2 Cal.3d 619, 631 ["It is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit; just as in the case of a question of fact, the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute"].)

On the facts of this case, there was only one criminal transaction – one

14

"crime" – of which there were four victims, Mr. Roberts and the three clerks. Appellant/petitioner and his accomplice pointed their guns at the four persons simultaneously and ordered the clerks to lie on the floor and Mr. Roberts to empty the safe. The judge recognized this at the sentencing hearing when he said that "the offense [singular] there at Roberts' ... [had] some of the attributes of a single offense with multiple victims." (RT 9/21/98, p. 10.)

The statutory reference to "each crime" informed the public that a gun-use enhancement would be applied only once for each criminal episode. Appellant/petitioner was not given <u>fair warning</u> that as many enhancements might be applied as there were persons present during the robbery. (<u>United States v. Bass, supra</u>, 404 U.S. 336, 347-350 .)

**Even if Mr. Reynolds's intent as to the meaning of "each crime" were not necessarily the same as the Legislature's intent, the mere fact that he meant by that phrase "each criminal transaction" is enough to show that there is a *reasonable doubt* as to the meaning of it – i.e., different people can interpret it different ways – and appellant/petitioner must be given the benefit of that doubt and the more lenient interpretation. (<u>Keeler v. Superior Court, supra</u>, 2 Cal.3d 619, 631.)**

The Court of Appeals' reliance on <u>People v. Perez, supra</u>, 86 Cal.App.4th 675 was mistaken. In that case, the defendant murdered one person and attempted

15

to murder another, with a firearm.[2]  He received a 25-to-life enhancement to the

term for each crime for discharging a firearm and causing great bodily injury to the

two victims under subdivision (d) of section 12022.53.  He contended that he

should have received only one such enhancement.  His argument was not based on

the "for each crime" language of the first sentence of subdivision (f) but on the

"per person" language.[3]  He contended that the provision meant that, no matter

how many separate acts or crimes or criminal transactions a person committed, that

person could receive only one enhancement under section 12022.53.  (See the copy

of the Appellant's Opening Brief in Perez, p. 40, a copy of which was attached to

Appellant's Opening Brief in the Court of Appeal, and of which judicial notice

was and is requested under Evidence Code, sections 452, subd. (a) and 459, subd.

(a).)  He argued that the language of the second sentence of subdivision (f)

supported that interpretation.  The Fifth District panel noted that any ambiguity

introduced by the second sentence was cleared up by a 1998 amendment.  (People

---

[2] These were not simultaneous acts.  The record in Perez, of which appellant
requests judicial notice (Evid. Code, §§ 452, subd. (a); 459, subd. (a); People v
Hayes (1990) 52 Cal.3d 577, 611, fn. 3 [court takes notice of records of other case
attached to brief] and cases cited), shows that the defendant shot and killed his ex-
brother-in-law in an apartment, then his ex-sister-in-law struggled with him for
possession of the gun, and during the struggle the gun was discharged twice,
wounding her in the head and shoulder.  The defendant left the apartment, re-
entered, argued with the woman, and then beat her on the head with the gun.

[3] "Only one additional term of imprisonment under this section shall be
imposed per person for each crime."

16

v. Perez, supra, p. 682.)  The panel *said* that "this construction ignores the plain language of the first sentence, which makes clear that the subdivision (f) limitation applies 'for each crime,' not each criminal."  (Id., at p. 681.)  But in doing so, it was merely repeating the language of the first sentence, and it did not purport to analyze the meaning of "each crime."   Anything implied about the meaning of those words was mere *dictum*, since the court cannot have decided a point which was not raised.  (People v. Gilbert (1969) 1 Cal.3d 475, 482, fn. 7.)

Further, the Perez court did not consider the legislative history of section 12022.53 and its bearing on the meaning of "each crime."  On habeas corpus and by means of the documents in the bill files of which appellant requested judicial notice, it is shown that the relevant language of subdivision (f) was taken verbatim from Mike Reynold's "10/20/Life" initiative measure and that by "each crime" Mr. Reynolds meant "each criminal transaction."

Therefore, the 3 1/3-year terms for the 12022.53 enhancements attached to Counts 2 and 3 should be stricken.

**CONCLUSION**

For the foregoing reasons, a writ of habeas corpus should be granted, the judgment should be reversed, and the two 3 1/3-year terms for the 12022.53 enhancements to Counts 2 and 3 should be stricken.

Dated: January 29, 2002                    Respectfully submitted,


RICHARD SUCH
   Staff Attorney
FIRST DIST. APPELLATE PROJECT
   Attorneys for Appellant/petitioner
   CARLOS CHICO

18

RECEIVED

JAN 0 3 2002

First District
APPELLATE Project

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

F I L E D
Court of Appeal - First App. Dist.

JAN 0 2 2001

RON D. BARROW, CLERK
BY _____
DEPUTY

THE PEOPLE,

    Plaintiff and Respondent,

v.

CARLOS CHICO,

    Defendant and Appellant.

A092567

(San Mateo County
Super. Ct. No. SC042571A)
ORDER MODIFYING OPINION
[NO CHANGE IN JUDGMENT]

BY THE COURT:

The opinion filed herein on December 21, 2001, is modified as follows:

The caption is changed by deleting "In re CARLOS CHICO, on Habeas Corpus" together with the case number (A096594).

This modification does not effect a change in the judgment.

Date:   JAN 0 2 2002    REARDON, ACTING P.J.  Acting P. J.

APPENDIX B

1

COPY

COURT OF APPEAL, FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA 94102
DIVISION 4

IN RE CARLOS CHICO ON HABEAS CORPUS.

A096594
San Mateo County No. SC042571A

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Reardon, Acting P.J., Sepulveda, J. and Kay, J. joined in the decision.)

Date: ___DEC 2 1 2001___        REARDON, ACTING P.J. ____P.J.

APPENDIX C

## PROOF OF SERVICE BY MAIL

I, BONNIE PALMER, say:

I am over the age of eighteen years, a citizen of the United States, and a resident of Contra Costa County, California. My business address is 730 Harrison St., #201, San Francisco, CA, 94107.  On January 30, 2002, I served a copy of Appellant/Petitioner's Petition for Review on the following persons by placing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Francisco, California, addressed as follows:

Attorney General
455 Golden Gate Ave. # 11000
San Francisco, CA 94102

District Attorney
San Mateo County
400 County Center
Redwood City, CA 94063

Clerk, Superior Court
San Mateo County
Hall of Justice
401 Marshall St.
Redwood City, CA 94063

Clerk, Court of Appeal
First Appellate District, Div. 4
350 McAllister St.
San Francisco, CA 94102 (Hand Delivery)

Carlos Chico


I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30 of January, 2002, at San Francisco, California.

BONNIE PALMER

# EXHIBIT C

Court of Appeal, First Appellate District, Division Four - No. A092567
**S104024**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

CARLOS CHICO, Defendant and Appellant;

SUPREME COURT
**FILED**

MAR 2 7 2002

Frederick K. Ohlrich Clerk

DEPUTY

Petition for review GRANTED.

Further action in this matter is deferred pending consideration and disposition of a related issue in *People v. Buttram,* S103761 (see Cal. Rules of Court, rule 29.2 (c )), or pending further order of the court.  Submission of additional briefing, pursuant to California Rules of Court, rule 29.3, is deferred pending further order of the court.

Chin, J., was absent and did not participate.

George

_____
*Chief Justice*
Kennard

_____
*Associate Justice*
Baxter

_____
*Associate Justice*
Werdegar

_____
*Associate Justice*

_____
*Associate Justice*
Brown

_____
*Associate Justice*
Moreno

_____
*Associate Justice*

DOCKETED
SAN FRANCISCO

MAR 2 8 2002

By L. CARAMANZANA
No. SF2000DA1315



# EXHIBIT D

Court of Appeal, First Appellate District, Division Four - No. A092567

S104024

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

THE PEOPLE, Plaintiff and Respondent,

v.

CARLOS CHICO, Defendant and Appellant.

SUPREME COURT

**FILED**

OCT 2 9 2003

Frederick K. Ohlrich Clerk

DEPUTY

    Pursuant to rule 29.3(b), California Rules of Court, the above-entitled review is DISMISSED and cause is remanded to the Court of Appeal, First Appellate District, Division Four.

|  |
|---|
| **George** |
| *Chief Justice* |
| **Kennard** |
| *Associate Justice* |
| **Baxter** |
| *Associate Justice* |
| **Werdegar** |
| *Associate Justice* |
| **Chin** |
| *Associate Justice* |
| **Brown** |
| *Associate Justice* |
| **Moreno** |
| *Associate Justice* |

DOCKET
ADM-SF _____
CIV-SF _____
CR-SF _SF2000DA_ /3/5
Entered by _LMS_
Date _10/31/03_

# EXHIBIT E

E-Filing, HABEAS

# U.S. District Court
## California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:05-cv-01282-MJJ

Chico v. Campbell
Assigned to: Hon. Martin J. Jenkins
Case in other court: USDC Eastern District of California,
               2:05-CV-00146MCE PAN
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 03/29/2005
Jury Demand: None
Nature of Suit: 530 Habeas Corpus
(General)
Jurisdiction: Federal Question

**Petitioner**

**Carlos Chico**                      represented by   **Benjamin P. Ramos**
Law Office of Benjamin P. Ramos
7405 Greenback Lane
Suite 287
Citrus Heights, CA 916967-2927
(916) 967-2927
Fax: 916 671-1710
Email: scorpio1b@comcast.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Rosanne Campbell**           represented by   **Peggy S. Ruffra**
CA State Attorney's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004
415-703-1362
Fax: 415-703-1234
Email: peggy.ruffra@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nanette Sue Winaker**
Attorney General
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004
415 703-5934
Fax: 415 703-1234
Email: nanette.winaker@doj.ca.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/29/2005 | 1 | Case transferred in from Eastern District of California; Case Number 2:05-cv-146 MCE-PAN. Original file with documents numbered 1-7, certified copy of transfer order and docket sheet received. Filed byCarlos Chico. (slh, COURT STAFF) (Filed on 3/29/2005) Additional attachment (s) added on 4/4/2005 (slh, COURT STAFF). (Entered: 03/31/2005) |
| 03/29/2005 | | CASE DESIGNATED for Electronic Filing. (slh, COURT STAFF) (Filed on 3/29/2005) (Entered: 04/04/2005) |
| 04/04/2005 | 2 | CLERK'S NOTICE to counsel regarding transferred action. (slh, COURT STAFF) (Filed on 4/4/2005) (Entered: 04/04/2005) |
| 10/20/2005 | 3 | CLERK'S NOTICE. Status Conference set for 11/29/2005 02:00 PM. Joint Status Conference Statement due by 11/21/2005. (Attachments: # 1 Standing Order) (mat, COURT STAFF) (Filed on 10/20/2005) (Entered: 10/20/2005) |
| 11/01/2005 | 4 | JOINT CASE MANAGEMENT STATEMENT filed by Rosanne Campbell. (slh, COURT STAFF) (Filed on 11/1/2005) (Entered: 11/07/2005) |
| 11/16/2005 | 5 | CLERK'S NOTICE vacating Status Conference. (mat, COURT STAFF) (Filed on 11/16/2005) (Entered: 11/16/2005) |
| 12/06/2005 | 6 | CLERK'S NOTICE. Case Management Conference set for 12/13/2005 02:00 PM. (mat, COURT STAFF) (Filed on 12/6/2005) (Entered: 12/07/2005) |
| 06/13/2006 | 7 | ORDER re: Status Statement. Signed by Judge Martin J. Jenkins on 6/13/2006. (mat, COURT STAFF) (Filed on 6/13/2006) (Entered: 06/16/2006) |
| 06/20/2006 | 8 | JOINT CASE MANAGEMENT STATEMENT filed by Rosanne Campbell. (slh, COURT STAFF) (Filed on 6/20/2006) (Entered: 06/23/2006) |
| 06/23/2006 | 9 | CLERK'S NOTICE re: Failure to E-File and/or Failure to Register as an E-Filer re: [8]. (slh, COURT STAFF) (Filed on 6/23/2006) (Entered: 06/23/2006) |
| 06/23/2006 | 10 | JOINT CASE MANAGEMENT STATEMENT *JOINT CASE MANAGEMENT STATEMENT* filed by Rosanne Campbell. (Ruffra, Peggy) (Filed on 6/23/2006) (Entered: 06/23/2006) |
| 05/16/2007 | 11 | ORDER TO SHOW CAUSE. Respondent to answer 60 days from date of issuance of Order. Petitioner to file traverse 30 days from receipt of answer. Signed by Judge Martin J. Jenkins on on 5/4/07. (epb, COURT STAFF) (Filed on 5/16/2007) (Entered: 05/16/2007) |
| 05/31/2007 | 12 | Mail Returned as Refused. Mail sent to Rosanne Campbell. (gba, COURT STAFF) (Filed on 5/31/2007) (Entered: 06/05/2007) |
| 07/10/2007 | 13 | MOTION for Extension of Time to File Response/Reply filed by |

| | | Rosanne Campbell. (Attachments: # 1 APPLICATION FOR EXTESION OF TIME TO FILE RESPONSE# 2 DECLARATION OF NANETTE WINAKER IN SUPPORT OF APPLICATION FOR EXTENSION OF TIME# 3 Proposed Order)(Winaker, Nanette) (Filed on 7/10/2007) (Entered: 07/10/2007) |
|---|---|---|
| 07/23/2007 | 14 | ORDER by Judge Martin J. Jenkins granting 13 Motion for Extension of Time to File Response/Reply Respondent's Response due by 9/13/2007. Petitioner's Traverse due within 30 days of service of answer. (epb, COURT STAFF) (Filed on 7/23/2007) (Entered: 07/23/2007) |
| 09/07/2007 | 15 | MOTION for Extension of Time to File Answer filed by Rosanne Campbell. (Attachments: # 1 APPLICATION FOR EXTENSION OF TIME TO FILE RESPONSE# 2 DECLARATON OF NANETTE WINAKER IN SUPPORT OF APPLICATION FOR EOT# 3 Proposed Order)(Winaker, Nanette) (Filed on 9/7/2007) (Entered: 09/07/2007) |
| 09/11/2007 | 16 | ORDER by Judge Martin J. Jenkins denying without prejudice 15 Motion for Extension of Time to Answer (mjjlc2, COURT STAFF) (Filed on 9/11/2007) (Entered: 09/11/2007) |
| 09/25/2007 | 17 | MOTION for Extension of Time to File Answer filed by Rosanne Campbell. (Attachments: # 1 APPLICATION FOR EXTENSION OF TIME TO FILE RESPONSE# 2 DECLARATION OF NANETTE WINAKER IN SUPPORT OF APPLICATION FOR EOT# 3 Proposed Order)(Winaker, Nanette) (Filed on 9/25/2007) (Entered: 09/25/2007) |
| 10/01/2007 | 18 | ORDER by Judge Martin J. Jenkins granting 17 Motion for Extension of Time to Answer. (rbe, COURT STAFF) (Filed on 10/1/2007) (Entered: 10/01/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/02/2007 14:49:08 | | |
| **PACER Login:** | dj0082 | **Client Code:** | cc |
| **Description:** | Docket Report | **Search Criteria:** | 3:05-cv-01282-MJJ |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |